[No. B029884. Second Dist., Div. Five. Feb. 19, 1988.]

HARRY DAVID STEVENS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;

THE PEOPLE, Real Party in Interest.

**COUNSEL**

Dale Michael Rubin, Steiner & Gerstein and Jonathan B. Steiner for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Harry B. Sondheim, Harold Lynn and Dennis Kucera, Deputy District Attorneys, for Real Party in Interest.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Andrew D. Amerson and Shunji Asari, Deputy Attorneys General, as Amici Curiae on behalf of Real Party in Interest.

**OPINION**

**ASHBY, Acting P. J.**—The issue in this case of first impression is whether the respondent court abused its discretion by taking the unprecedented step of removing petitioner's retained counsel because counsel's trial schedule

would have forced a continuance of petitioner's case for a period of at least six months.

■ Although petitioner's case has proceeded to a conviction, rendering the petition technically moot, the People have urged us to address the merits of the petition because the issue is one of continuing public interest which is likely to recur in the future. We agree that in light of the important questions raised, this court should exercise its discretion to render an opinion in this case despite its mootness. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193]; *Agricultural Labor Relations Bd.* v. *Richard A. Glass Co.* (1985) 175 Cal.App.3d 703 [221 Cal.Rptr. 63].)

The respondent court has made a careful record in this case. That record reveals that the court's decision to relieve counsel, undertaken with great reluctance, was an appropriate exercise of discretion. Accordingly, we deny the petition.

## FACTS

Petitioner and three codefendants were charged with robbery and burglary; petitioner was also charged with possession of methamphetamine. The charges arose out of an incident in which petitioner was alleged to have driven his codefendants to the victim's home, where the victim was beaten and robbed.

Petitioner was arraigned on April 20, 1987. Although petitioner had retained attorney Dale Rubin, Mr. Rubin was unable to appear at the arraignment because he was engaged in pretrial motions in a death penalty case. Mr. Rand Rubin, Dale Rubin's brother and partner, appeared at the arraignment on petitioner's behalf.

At the arraignment, the district attorney requested that Dale Rubin be relieved as petitioner's counsel: "Your Honor . . . if Dale Rubin is the attorney, I'm going to ask that somebody else appear in his place instead, because this case won't go to trial for over a year if he's the lawyer on it. He's booked up with all these death penalty cases. There's no way in the foreseeable future that this case is going to trial in under a year. As a matter of fact, it'll probably be a year and a half to two years. . . . I'm going to ask this court to appoint counsel who can go to trial on this case. The People are entitled to some semblance of a speedy trial."

The court responded that it had no authority for removing retained counsel just because counsel "will not be ready within a certain amount of

time, and that may inconvenience the People." Although the recent case of *People v. Lucev* (1986) 188 Cal.App.3d 551 [233 Cal.Rptr. 222] had approved the removal of *appointed* counsel who would "not be able to try the case in a timely fashion," the respondent court stated that it was unwilling to take a "quantum leap from *Lucev* without at least inquiring into the availability of Dale Rubin." The court set a tentative trial date of June 8, 1987, with a pretrial conference on May 15, 1987. That date (a Friday) was selected to accommodate the schedule of Dale Rubin, who was occupied with his death penalty case on Mondays through Thursdays.

At the pretrial conference on May 15, Rand Rubin once again appeared on behalf of petitioner. In response to the district attorney's inquiry as to when Dale Rubin would be available to try the case, Rand Rubin replied: "I believe that jury selection in the case that he's on is scheduled to begin in July, which is six months into that case. And I believe that that case will probably take between nine months and a year to complete."

The court continued the matter to June 5 (also a Friday), commenting, "On June 5th, if Mr. [Dale] Rubin does not believe he will be available for a year, then I want arguments by both sides as to whether or not I have the power [to relieve him] and [the] amount of discretion I do have."

On June 5, Dale Rubin appeared on behalf of petitioner. The district attorney's motion to have Dale Rubin relieved was discussed briefly, and the matter was continued to June 19 for pretrial, trial setting, and a formal hearing on the motion.

On June 19, Rand Rubin once again appeared for Dale Rubin. During the hearing, he revealed that Dale Rubin's death penalty case would end no earlier than February. The court concluded the hearing with the following comments: "I want to commend both counsel for outstanding arguments. And this is a very difficult decision for the court because both of you are right. When both of you are right, that puts the court in a dilemma. But I am going to make the following ruling: I think that going over to February is far too long, not only for the People's rights, but also the court's calendar. And, therefore, under *People v. Dowell* [(1928) 204 Cal. 109] and its progeny, in light of Penal Code section 1050, in light of the California Constitution, Article I, Section 28, I am going to make the following ruling: I am going to order Mr. Stevens to return to this court on . . . August 14, 1987. . . . At that time, I want the Rubin brothers to say they are either ready to go to trial in September or I want Mr. Stevens to come in with new counsel ready to go to trial by September, although I will be lenient and allow a continuance to October if proper showing is made, but only if a proper showing is made. On August 14, if Mr. Stevens does not have new

counsel, I will then appoint him new counsel under 987.2 of the Penal Code, and he will reimburse that attorney."

Dale Rubin appeared for petitioner on August 14 and told the court that the "best estimate" of a date on which his capital case would be concluded was February 1988. The court then relieved Dale Rubin and appointed Donald Goldsobel to represent petitioner.

Petitioner's trial ultimately commenced on December 12, 1987, after Mr. Goldsobel was relieved due to unavailability and a friend of petitioner, attorney Daniel Bowles, was substituted in his place. On January 8, 1988, petitioner was convicted on all counts.

### DISCUSSION

■ "The right to the effective assistance of counsel 'encompasses the right to retain counsel of one's own choosing.' Underlying this right is the premise that 'chosen representation is the preferred representation. Defendant's confidence in his lawyer is vital to his defense. His right to decide for himself who best can conduct the case must be respected wherever feasible.' " (*People* v. *Courts* (1985) 37 Cal.3d 784, 789 [210 Cal.Rptr. 193, 693 P.2d 778]; citations omitted.) "[T]hough it is clear that a defendant has no *absolute* right to be represented by a particular attorney, still the courts should make all reasonable efforts to ensure that a defendant financially able to retain an attorney of his own choosing can be represented by that attorney. [Citation.] This is especially so when defendant is in no way responsible for the absence of his retained counsel." (*People* v. *Crovedi* (1966) 65 Cal.2d 199, 207 [53 Cal.Rptr. 284, 417 P.2d 868].) ■ Citing *Crovedi* and *Courts,* the court in *People* v. *Lucev, supra,* 188 Cal.App.3d 551, 556, held that "[t]he concept of due process, as it relates to the right of counsel, does not require that a defendant be allowed under all circumstances to be represented by a particular attorney. The reason is that other values of substantial importance, such as assurance of an orderly and speedy determination of criminal charges, must be considered. 'The very development of Anglo-American procedures associated with the concept of due process exemplifies the accommodation of seemingly conflicting values within the context of enforcing the criminal law. . . .' Courts should seek an accommodation reasonable under the facts of the particular case."

■ ■ The "seemingly conflicting values" to which the *Lucev* court alluded are the defendant's right to counsel of his own choosing, on the one hand, and the right of the People and the court to an expeditious determination of criminal cases, on the other. The People's right to a prompt resolution of criminal proceedings is codified in Penal Code section 1050, subdivi-

sion (a), which provides in pertinent part: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses. . . . It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice."

The issue before this court is whether, based upon the posture of the case on August 14, 1987, the court's decision to relieve Mr. Dale Rubin was "an accommodation reasonable under the facts of the particular case." (*People v. Courts, supra,* 37 Cal.3d 784, 790; *People v. Lucev, supra,* 188 Cal.App.3d 551, 556.) We conclude that it was.

Mr. Rubin's abilities as an attorney were extolled by the respondent court a number of times throughout the proceedings below. At one point, the court commented, "It is hard to find any finer lawyers than the Rubin brothers. I will say that for the record without any qualification." This sentiment was echoed by the Deputy District Attorney, Mr. Lynn, who expressed his highest personal and professional regard for Mr. Dale Rubin.

However, Mr. Rubin's capabilities also worked to petitioner's disadvantage here, since Mr. Rubin was in great demand as one of a small panel of criminal defense attorneys qualified to handle capital cases. Twenty years ago, this factor would have had little impact on a case such as this one. As the district attorney, commented however, "We seem to have embarked upon a new era of the criminal law . . . the one-year trial." At the time the District Attorney raised the issue of Mr. Dale Rubin's availability, Mr. Rubin was about to embark upon such a trial. Recognizing that this severely limited Mr. Rubin's availability, but nonetheless wishing to accommodate his trial schedule, the respondent court scheduled several hearings in this matter for Fridays, when Mr. Rubin was supposed to be "relatively free." Mr. Rubin appeared at some, but not all, of the Friday hearings.

At petitioner's arraignment in April 1987, when the district attorney first made the suggestion that Dale Rubin be relieved as petitioner's counsel, the court stated, "[T]he People can attempt to make a motion under *Lucev,* if they can go that far. I'll be honest with you. I doubt you will be able to do it, but I will entertain it." As the summer progressed, the court tried several

times to pin down Messrs. Rubin as to when Dale Rubin might be available to try petitioner's case, and indicated its willingness to continue the case as far as October 1987 (six months after arraignment) to afford petitioner the benefits of Mr. Rubin's defense. By August, however, Dale Rubin's "best estimate" of his availability was February of 1988. Since the court had previously indicated it would not continue the case past October, and petitioner did not appear with new counsel who could go to trial by that time, the court was left with no choice but to relieve Mr. Rubin and appoint new counsel for petitioner.

The court's ruling reflects a careful balancing of interests, including a public policy argument raised by petitioner: That such a ruling would have a "chilling effect" on the "backbone of the defense bar," who would in effect have to choose between the private practice of law and accepting appointments in death penalty cases. Unfortunately, we cannot resolve that dilemma. However, as the People correctly point out, they have no control over the availability of the defendant's chosen attorney, while the defendant is in a position to choose an attorney who will be available for trial. As our Supreme Court commented in *People* v. *Dowell* (1928) 204 Cal. 109, 113 [266 P. 807] (a case decided long before the advent of the "one-year trial"), "It is manifest that the courts cannot in every case await the convenience of some attorney before they can function. Reduced to its lowest terms this would allow a popular attorney to have the courts marking time to serve his convenience."

Petitioner, referring to the entire proceeding below as "a fraud," contends that even if Dale Rubin had not been engaged in trial on August 14, 1987, he could not have announced ready for trial because the People had not complied with requested discovery. In fact, the record shows that the court did address the issue of discovery compliance at the August 14 hearing *after* it appointed new counsel to represent petitioner. The court assigned a tentative trial date of October 1, 1987, to allow sufficient time for discovery compliance. The tentative trial date was still four months before the earliest date Dale Rubin could have been available to try the case.

■ Lastly, petitioner contends that Judge Schwab had no jurisdiction to make the ruling in issue because petitioner filed an affidavit pursuant to Code of Civil Procedure section 170.6, at the beginning of the August 14 hearing. Judge Schwab honored the affidavit with respect to all future matters in the case. However, the issue of Dale Rubin's removal had technically been pending since June, and had been continued to accommodate Mr. Rubin. The affidavit filed on August 14 was therefore untimely with respect to the removal of counsel issue.

The petition for writ of mandate is denied.

Boren, J., and Hastings, J.,* concurred.

Petitioner's application for review by the Supreme Court was denied May 19, 1988. Mosk, J., was of the opinion that the application should be granted.

.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.