[No. B101152. Second Dist., Div. Five. June 6, 1996.]

MICHAEL WILLIAMS, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Michael P. Judge, Public Defender, Steven H. Hough, Peter C. Swarth and John Hamilton Scott, Deputy Public Defenders, for Petitioner.

Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon for Respondent.

No appearance for Real Party in Interest.

## OPINION

**GODOY PEREZ, J.**—Defendant and petitioner Michael Williams, also known as Michael Antoine Price, challenges an order of the respondent court refusing to appoint the Los Angeles County Public Defender to represent him. We hold that a trial court is required to appoint the public defender to represent an indigent defendant when the public defender is "available," meaning that the public defender can be ready for trial and in court on the designated trial date. In determining the public defender's availability, the court may either rely on the public defender's representation that he or she is available, or may elicit additional information from counsel which will aid the court in making that determination. A finding of unavailability, however, may not be based solely upon the number and age of the public defender's pending caseload where counsel represents it will not interfere with his or her trial readiness. Penal Code section 987.05 allows a court to impose substantial sanctions for counsel's failure to be ready, without good cause, as initially represented to the court.[1]

## FACTUAL AND PROCEDURAL HISTORY

Defendant was charged with possession of a firearm by an ex-felon (§ 12021, subd. (a)(1)), and with two prior felony convictions, within the meaning of sections 1170.12, subdivisions (a) through (d), and 667, subdivisions (b) through (i). Deputy Public Defender Peter C. Swarth represented defendant through the preliminary examination. Defendant was held to answer and his arraignment in superior court was set for April 2, 1996.

Defendant and Mr. Swarth appeared for arraignment before respondent court. According to defendant, respondent court maintains a list of all pending felony cases, the length of time which has passed since arraignment, and the attorneys assigned to represent the defendants in each case. That list indicated that Mr. Swarth was representing 21 clients whose cases were beyond the 60-day statutory time for trial following arraignment,[2] with 16 of

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Section 1382 provides: "(a) The court, unless good cause to the contrary is shown, shall order the action to be dismissed in the following cases: [¶] . . . [¶] (2) When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information . . . ."

Section 1049.5 provides: "In felony cases, the court shall set a date for trial which is within 60 days of the defendant's arraignment in the superior court unless, upon a showing of good cause as prescribed in Section 1050, the court lengthens the time. If the court, after a hearing as prescribed in Section 1050, finds that there is good cause to set the date for trial beyond the 60 days, it shall state on the record the facts proved that justify its finding. A statement of facts proved shall be entered in the minutes."

those cases older than 120 days from their arraignment.[3]

At defendant's arraignment, the court asked Mr. Swarth how he could "possibly handle this case in the next 60 days" in light of the other cases on his calendar. Mr. Swarth indicated there were no cases calendared for trial at the time of defendant's anticipated trial date which would interfere with his representation of defendant. Mr. Swarth added that the only thing he could foresee affecting his ability to handle this case would be the People's failure to timely comply with discovery. Mr. Swarth told the court, "I believe I can be ready and available." Respondent court disagreed, stating, "It does not appear from this court's reading of the number of cases that you have that you can be prepared in a timely fashion since obviously the other matters that you already have should get priority over this one." The court opined that each of the other 21 cases would take 3 days to try, putting defendant's case well beyond the 60-day limitation of section 1382, subdivision (a)(2). Again, Mr. Swarth told the court he could be ready for trial.

The court instructed Mr. Swarth to contact his office and inquire whether another deputy public defender could try the case; if there was no one from that office available, the court would appoint a private panel attorney to represent defendant. (§ 987.2.) When the hearing resumed, Mr. Swarth reported that the public defender determined he should try defendant's case, and asserted it would be in defendant's best interest for him to do so. The court disagreed, and appointed a panel attorney who said he could try defendant's case in 60 days.[4]

Defendant's trial began on May 30, 1996, while this petition was pending. Defendant was represented by the court-appointed panel attorney. Since defendant's objective in filing the petition was to have Mr. Swarth appointed as his counsel, the petition was rendered moot by the commencement of defendant's trial. However, because the petition raises issues of significant public concern which are likely to recur, we exercise our discretion to resolve those issues. (See *In re William M.* (1970) 3 Cal.3d 16, 23-24 [89 Cal.Rptr. 33, 473 P.2d 737].)

---

[3]Mr. Swarth disputed this number. According to his calculations, he had 17 cases beyond 60 days, with 15 over 120 days. This minor difference in numbers is not essential to our discussion.

[4]Although the court did not inquire on the record about the panel attorney's pending caseload, defendant's counsel stated at oral argument that considerable activity occurred off the record in an effort to locate a panel attorney who would be available to try the case.

## DISCUSSION

### A. Appointment of the Public Defender

An indigent defendant has the right to a court-appointed attorney at the time of his arraignment. Section 987, subdivision (a), provides: "In a non-capital case, if the defendant appears for arraignment without counsel, he or she shall be informed by the court that it is his or her right to have counsel before being arraigned, and shall be asked if he or she desires the assistance of counsel. If he or she desires and is unable to employ counsel the court shall assign counsel to defend him or her." (*Alexander* v. *Superior Court* (1994) 22 Cal.App.4th 901, 910 [27 Cal.Rptr.2d 732].)[5]

Trial courts in Los Angeles County are required to appoint the public defender, subject to availability and in the absence of a conflict of interest. Section 987.2, subdivision (e) describes the process as follows: "In a county of the first, second, or third class,[6] the court shall first utilize the services of the public defender to provide criminal defense services for indigent defendants. In the event that the public defender is unavailable and the county has created a second public defender and contracted with one or more responsible attorneys or with a panel of attorneys to provide criminal defense services for indigent defendants, and if the quality of representation provided by the second public defender is comparable to the quality of representation provided by the public defender, the court shall next utilize the services of the second public defender and then the services of the county-contracted attorneys prior to assigning any other private counsel. Nothing in this subdivision shall be construed to require the appointment of counsel in any case in which the counsel has a conflict of interest. In the interest of justice, a court may depart from that portion of the procedure requiring appointment of the second public defender or a county-contracted attorney after making a finding of good cause and stating the reasons therefor on the record." This provision allows for a deviation in the requisite order of appointment of the second public defender or the county-contracted attorney, but not for the requirement that the public defender be utilized first.

Government Code section 27706, subdivision (a) specifies the obligations of the public defender: "The public defender shall perform the following duties: [¶] (a) Upon request of the defendant or upon order of the court, the

---

[5] In *Alexander*, we determined that the superior court has the authority to appoint counsel for an indigent defendant at the time of arraignment and is not bound by an appointment made for the preliminary examination. We need not address that issue again in this opinion.

[6] The class designation separates counties by population; Los Angeles County, with a population of over 4 million is considered a county of the first class. (Gov. Code, §§ 28022-28024.)

public defender shall defend, without expense to the defendant, except as provided by Section 987.8 of the Penal Code, any person who is not financially able to employ counsel and who is charged with the commission of any contempt or offense triable in the superior, municipal or justice courts at all stages of the proceedings, including the preliminary examination. The public defender shall, upon request, give counsel and advice to such person about any charge against the person upon which the public defender is conducting the defense, and shall prosecute all appeals to a higher court or courts of any person who has been convicted, where, in the opinion of the public defender, the appeal will or might reasonably be expected to result in the reversal or modification of the judgment of conviction." Again, the statute requires the public defender to defend those indigent clients who request its services.

■ Cases addressing the issue of whether an indigent defendant is entitled to *private* counsel of his or her choice have held that although the appointment of counsel under section 987.2 rests within the sound discretion of the trial court, the court's discretion may not be restricted by any fixed policy. (See *People* v. *Horton* (1995) 11 Cal.4th 1068, 1098 [47 Cal.Rptr.2d 516, 906 P.2d 478].) In *Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 795 [140 Cal.Rptr. 318, 567 P.2d 750], after the public defender had declared a conflict of interest, both petitioners requested the appointment of specific private attorneys. After conducting a hearing and inquiring into the reasons for the requests, the trial court refused to make such appointments. The Supreme Court, reaffirming its holding in *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984], held that "[a]n indigent defendant's preference for a particular attorney, while it is to be considered by the trial court in making an appointment [citation] is not a determinative factor *requiring* the appointment of that attorney—even in combination with other relevant factors such as the subject attorney's competence and availability. As we have indicated, the matter rests wholly within the sound discretion of the trial court." (*Harris* v. *Superior Court*, *supra*, 19 Cal.3d at pp. 795-796, original italics, fn. omitted.) The court defined judicial discretion as " '. . . that power of decision exercised to the necessary end of awarding justice based upon reason and law but for which decision there is no special governing statute or rule. Discretion implies that in the absence of positive law or fixed rule the judge is to decide a question by his view of expediency or of the demand of equity and justice.' . . . [Citations.]" (*Id.* at p. 796.) The Supreme Court held that in exercising its discretion, the trial court is required to review the entire record, analyzing the objective and subjective factors in appointing indigent defense counsel. The court concluded that the trial court had abused its discretion in declining to appoint counsel requested by defendants in that case.

In *People* v. *Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401], after the public defender had declared a conflict of interest, the defendant requested the same conflict attorney who had represented him at the preliminary examination. The superior court summarily denied that request, stating, *". . . we don't do that, Mr. Chavez. We appoint our own counsel at the Superior Court level."* (*Id.* at p. 341, original italics.) Finding an abuse of discretion, the Supreme Court held that the superior court had "improperly adhered to a fixed policy of appointing its 'own' counsel in every case. The exercise of the court's discretion in the appointment of counsel should not have been restricted by an inflexible rule, but rather should have rested upon consideration of the particular facts and interests involved in the case before it. By refusing to give defendant Chavez an opportunity to explain why he preferred that his former counsel represent him at trial, the court effectively foreclosed consideration of any arguments which defendant may have marshalled in support of continuing Attorney Ingber's appointment." (*Id.* at p. 346).

In *People* v. *Daniels* (1991) 52 Cal.3d 815 [277 Cal.Rptr. 122, 802 P.2d 906], defendant objected to the appointment of the public defender because he did not trust the public defender's office. He told the court that a deputy public defender who represented him in a previous case did not inform him that the deputy was negotiating for a position with the district attorney. Defendant requested a specific attorney, whom he trusted, to represent him. The court refused his request and appointed the public defender, who represented the defendant through the preliminary examination before declaring a conflict. Again, the trial court refused to appoint private counsel of defendant's choice. On appeal, the Supreme Court held that the trial court did not abuse its discretion in appointing the public defender initially, because "the public defender whose competence might have been under attack was no longer with that office," and defendant had "not shown any personal or professional relationship suggestive of a conflict of interest between the deputies actually representing him in this case and the departed deputy who had represented him . . . ." (*Id.* at p. 843.) As to the trial court's refusal to appoint counsel of choice after the public defender declared a conflict, the court, utilizing the abuse of discretion standard, held that the trial court acted within its discretion in refusing to appoint defendant's counsel of choice. (*Id.* at p. 845.)

The cases we have discussed, all involved the trial court's exercise of its discretion in the appointment of private counsel after the public defender declared a conflict. However, in *Charlton* v. *Superior Court* (1979) 93 Cal.App.3d 858 [156 Cal.Rptr. 107], the court addressed the issue before us, whether such trial court discretion exists when the public defender has not declared a conflict.

In *Charlton*, the petitioner, convicted of first degree murder, filed a petition for writ of habeas corpus and obtained an order to show cause, returnable to the superior court, to inquire into the validity of his contention that trial counsel in his murder case was incompetent. Petitioner requested that the attorney who filed the habeas corpus petition be appointed to represent him at the evidentiary hearing. The trial court refused to do so and appointed the public defender upon finding him available. The *Charlton* court first determined that the statutory implementation of an indigent defendant's right to appointed counsel in the context of a criminal trial was equally applicable in habeas corpus proceedings. Citing section 987.2, the court then concluded that, "in habeas corpus proceedings in which an indigent petitioner is entitled to and desires appointed counsel, the court is required to appoint the public defender if there is one, provided the public defender does not have a conflict of interest or cannot represent the petitioner for other good case." (*Charlton* v. *Superior Court, supra,* 93 Cal.App.3d at p. 863.)[7]

■ Our review of the applicable statutes causes us to agree with the analysis in *Charlton*. As our Supreme Court suggested in *Harris, supra,* a court may exercise its discretion in appointing counsel "in the absence of positive law or fixed rule . . . ." (*Harris,* v. *Superior Court, supra,* 19 Cal.3d at p. 796.) In this case, however, there is positive law. The laws governing the priority appointment of the public defender are clearly set forth in Government Code section 27706 and Penal Code section 987.2, eliminating any void compelling the application of discretion. Those statutes provide that a court must first utilize the services of the public defender in providing criminal defense services for indigent defendants, if the public defender is available to try the matter.

### B.   *Availability of the Public Defender*

■ Directing ourselves to the question of whether the public defender was available for appointment in this case, we note that the trial court is obligated to appoint only those attorneys who will be ready for trial on a given date. Section 987.05 provides: "In assigning defense counsel in felony cases, whether it is the public defender or private counsel, the court shall only assign counsel who represents, on the record, that he or she will be ready to proceed with the preliminary hearing or trial, as the case may be, within the time provisions prescribed in this code . . . . Both the prosecuting attorney and defense counsel shall have a right to present evidence and

---

[7]In *People* v. *Daniels, supra,* 52 Cal.3d at page 844, our Supreme Court acknowledged the conflict of whether *Harris* and other cases allowing for discretionary appointment of indigent counsel were applicable to situations where the public defender was available for appointment. It chose not to decide that question.

argument as to a reasonable length of time for preparation and on any reasons why counsel could not be prepared in the set time."

While the public defender carefully distinguishes between an attorney being "available" for appointment under section 987.2 and being "ready for trial" under section 987.05, we find no such distinction. These sections should be read to be compatible with one another. If an attorney cannot be ready for trial within the prescribed time, it matters not that he or she is "available" in court. Whether an attorney can be ready for trial and in court on the trial date designated by the court is the standard we use in determining whether an attorney is available for appointment. That same standard should be used by the trial court.

When counsel represents to the court that he or she is available for appointment, that is, that he or she will be in court and ready for trial on the appointed date, the court may, in its discretion, accept that representation. Such representation by counsel, as an officer of the court, should not be made lightly or without due consideration. ■ An attorney has a duty "[t]o employ, for the purpose of maintaining the causes confided to him or her such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by any artifice or false statement of fact or law." (Bus. & Prof. Code, § 6068, subd. (d).) Further, a member of the State Bar "[s]hall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law." (Rules Prof. Conduct, rule 5-200(B).) " 'Honesty in dealing with the courts is of paramount importance, and misleading a judge is, regardless of motives, a serious offense.' " (*Paine* v. *State Bar* (1939) 14 Cal.2d 150, 154 [93 P.2d 103]; see also *Di Sabatino* v. *State Bar* (1980) 27 Cal.3d 159, 162-163 [162 Cal.Rptr. 458, 606 P.2d 765]; *Garlow* v. *State Bar* (1982) 30 Cal.3d 912, 917 [180 Cal.Rptr. 831, 640 P.2d 1106].) "Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice." (*Furlong* v. *White* (1921) 51 Cal.App. 265, 271 [196 P. 903].)

Representations of readiness as required by section 987.05 are clearly intended to be made carefully. The statute allows counsel a reasonable time to familiarize himself or herself with a case before representing to the court that he or she can be ready for trial. The measure of an attorney is by his or her word. Frequent misrepresentations to the court, although the result of hasty miscalculations, can undermine an attorney's credibility and justifiably cause a court to give little weight to counsel's representations of availability for appointment.

Although the court may accept counsel's representation of availability, our review of the relevant law leads us to conclude that a trial court is not obligated to accept an attorney's representation at face value. Section 987.05 allows for presentation of evidence in the determination of readiness. This implies that the court may make an independent evaluation in finding whether counsel can be ready at the time of trial, regardless of his or her representation to the court. Moreover, as the Supreme Court stated in *Drumgo*, "We have repeatedly held that constitutional and statutory guarantees are not violated by the appointment of an attorney other than the one requested by defendant. [Citations.] The additional factor that requested counsel has indicated his willingness and availability to act does not raise any constitutional compulsion requiring his appointment. . . ." (*Drumgo v. Superior Court, supra*, 8 Cal.3d at p. 934; *Alexander v. Superior Court, supra*, 22 Cal.App.4th at p. 915.)

In deciding whether counsel will be ready, the court may consider several factors, such as the number and trial age of cases an attorney already has, the expected length of those trials and their scheduled dates, as well as those of related pending motions. One other significant factor is the reliability of counsel's representation of readiness based upon past experience. These examples are given by way of illustration only; our intention is to allow the court sufficient flexibility to consider whatever factors it deems relevant to its determination. What the court may not do, however, is improperly adhere to a fixed policy for appointment in every instance. The court should be sufficiently flexible to consider factors other than the two cited by the court in this case, particularly if counsel represents that those factors will not interfere with trial readiness. "The exercise of the court's discretion in the appointment of counsel should not have been restricted by an inflexible rule, but rather should have rested upon consideration of the particular facts and interests involved in the case before it. . . . " (*People v. Chavez, supra*, 26 Cal.3d at p. 346.) Moreover, the court should not be swayed by extraneous factors which divert the court from its obligation to exercise proper judgment. For example, in *Craig S. v. Superior Court* (1979) 95 Cal.App.3d 568 [157 Cal.Rptr. 285], Division Three of this court determined that the court abused its discretion in not appointing the public defender by finding her "unavailable" after the court received notice that she would make a late appearance. The public defender's appearance was recorded as 35 minutes after the court appointed another attorney. "To hold that the trial court's conduct in the fact situation before us did not constitute an abuse of discretion would be to acquiesce in a state of affairs fraught with the opportunity for ' "capricious disposition or whimsical thinking" ' [citation]. Here, there is a strong inference that the trial court was annoyed with the public defender for being late, and was not exercising the required ' "discriminating judgment" ' [citation] in taking into consideration all the relevant factors that should have been part of the decision as to whether to

appint the public defender or private counsel." (*Craig S.* v. *Superior Court*, *supra*, 95 Cal.App.3d at p. 575, fn. omitted.)

■ In the present case, the court would have been justified in viewing with skepticism Mr. Swarth's representation that he could try defendant's case within 60 days, given the fact that Mr. Swarth admittedly had over 15 cases which were more than 120 days old. However, defendant correctly contends that the court erred when it refused to appoint Mr. Swarth based solely on the *numbers* and age of his pending cases. Numbers and age do not always provide the relevant information in a court's determination of ability to be ready. Numbers do not reveal, for example, those cases that were set beyond the present trial date or may have to be continued for good cause and will not interfere with this trial in any way. Numbers also do not indicate which cases are possible pleas, court trials, one day trials, multiple cases for one defendant or probation violations. Moreover, once Mr. Swarth indicated that he could try this case within the time set, despite his existing caseload, the court should have inquired further to determine if that were the case. If, after hearing Mr. Swarth's explanation, the court was not persuaded, it could have stated the reasons for its decision and declined the appointment of Mr. Swarth.

While we are sympathetic to the fact that trial courts are busy and function under pressure to expedite cases and accommodate those awaiting judicial process, the facts before us appear to have allowed for an inflexible evaluation of counsel's trial readiness. By refusing to give Mr. Swarth an opportunity to explain why he believed his calendar would not prevent him from being ready on the trial date, the court effectively foreclosed consideration of factors relevant in making an impartial decision in this case.

■ It bears noting that a court has the discretion to remove counsel who cannot try his or her client's case at the appointed time. (See, e.g., *Stevens* v. *Superior Court* (1988) 198 Cal.App.3d 932 [244 Cal.Rptr. 94]; *People* v. *Lucev* (1986) 188 Cal.App.3d 551 [233 Cal.Rptr. 222] [counsel's trial scheduled caused repeated delays]; *People* v. *Strozier* (1993) 20 Cal.App.4th 55, 62 [24 Cal.Rptr.2d 362] [counsel requested a continuance but could not show good cause for the continuance]; *Maniscalco* v. *Superior Court* (1991) 234 Cal.App.3d 846, 850-851 [285 Cal.Rptr. 795] [medical emergency which renders counsel incapable of adequately representing the defendant].) Further, an attorney who represents that he or she will be ready for trial on a date certain, but is not prepared at that time, risks not only removal from the case but severe sanctions as well.[8] The consequences of not being prepared for trial should inspire counsel to give the court an honest assessment of counsel's ability to timely try the case.

[8]Section 987.05 provides for substantial sanctions.

CONCLUSION

We conclude that respondent court should have allowed Mr. Swarth an opportunity to present further evidence on his ability to be ready for trial in this case and duly considered that evidence in determining whether Mr. Swarth was available for appointment.[9]

DISPOSITION

The petition for writ of mandate is denied as moot. Respondent's request for attorney fees pursuant to Code of Civil Procedure section 1021.5 is denied.

Armstrong, J., concurred.

**TURNER, P. J.,** Concurring and Dissenting.—I agree wholeheartedly with those portions of my colleagues' conclusions that: the present case involves an issue of assignment of counsel, not relieving an attorney (*Alexander* v. *Superior Court* (1994) 22 Cal.App.4th 901, 914 [27 Cal.Rptr.2d 732]); resolution of the present petition is subject to the deferential abuse of discretion standard (*People* v. *Horton* (1995) 11 Cal.4th 1068, 1099 [47 Cal.Rptr.2d 516, 906 P.2d 478]; *People* v. *Ortiz* (1990) 51 Cal.3d 975, 987 [275 Cal.Rptr. 191, 800 P.2d 547]; *People* v. *Chavez* (1980) 26 Cal.3d 334, 345 [161 Cal.Rptr. 762, 605 P.2d 401]; *Harris* v. *Superior Court* (1977) 19 Cal.3d 786, 799 [140 Cal.Rptr. 318, 567 P.2d 750]; *Drumgo* v. *Superior Court* (1973) 8 Cal.3d 930, 935 [106 Cal.Rptr. 631, 506 P.2d 1007, 66 A.L.R.3d 984]); the appointment of a deputy public defender falls within the assignment of counsel language in Penal Code section 987.05[1]; and standing alone, section 987.05 does not authorize a trial judge to assign someone

---

[9]Both defendant and respondent court have provided us with virtually a day-by-day update of Mr. Swarth's trial schedule and how it would have impacted this case. Although that information was of some benefit because it allowed us to follow the progress of defendant's case, it is irrelevant to our resolution of the issues presented here, since the court must evaluate counsel's availability based on information available to the court at the time of arraignment. Obviously, a court cannot base such a decision on events which may or may not occur.

[1]Penal Code section 987.05 provides: "In assigning defense counsel in felony cases, whether it is the public defender or private counsel, the court shall only assign counsel who represents, on the record, that he or she will be ready to proceed with the preliminary hearing or trial, as the case may be, within the time provisions prescribed in this code for preliminary hearings and trials, except in those unusual cases where the court finds that, due to the nature of the case, counsel cannot reasonably be expected to be ready within the prescribed period if he or she were to begin preparing the case forthwith and continue to make diligent and

other than the public defender at the time of the arraignment. I concur in the determination of my colleagues to dismiss the mandate petition as moot. However, I respectfully dissent from that portion of the majority opinion that concludes the respondent court abused its discretion in concluding that the public defender would not be available to try the present case within the statutorily mandated 60 days of the April 2, 1996, arraignment. I believe that when properly construed, the entire constitutional and statutory scheme is such that when an arraigning judge is faced with the facts presented in this case, a decision to find the public defender to be unavailable and appoint private counsel is within the scope of allowable judicial discretion.[2]

---

constant efforts to be ready. In the case where the time of preparation for preliminary hearing or trial is deemed greater than the statutory time, the court shall set a reasonable time period for preparation. In making this determination, the court shall not consider counsel's convenience, counsel's calendar conflicts, or counsel's other business. The court may allow counsel a reasonable time to become familiar with the case in order to determine whether he or she can be ready. In cases where counsel, after making representations that he or she will be ready for preliminary examination or trial, and without good cause is not ready on the date set, the court may relieve counsel from the case and may impose sanctions upon counsel, including, but not limited to, finding the assigned counsel in contempt of court, imposing a fine, or denying any public funds as compensation for counsel's services. Both the prosecuting attorney and defense counsel shall have a right to present evidence and argument as to a reasonable length of time for preparation and on any reasons why counsel could not be prepared in the set time." Unless otherwise indicated, all further statutory references are to the Penal Code.

[2]I also agree with my colleagues' summary of what occurred before the respondent court on April 2, 1996. One point warrants emphasis and this relates to the accuracy of under-oath allegations appearing in the mandate petition. The verified petition, which was filed on April 9, 1996, in an effort to comply with rule 56(c) of the California Rules of Court, stated the following: "The court inquired whether Deputy Public Defender Swarth would be ready to try petitioner's matter within 60 days of petitioner's arraignment, in light of the 17 older cases in which Deputy Public Defender Swarth was counsel. This question was presumably asked pursuant to Penal Code section 987.05, although the court was not faced at that time with the obligation to appoint counsel since petitioner was then represented by the Public Defender. [¶] Deputy Public Defender Swarth replied that all of the cases to which the court had referred had been delayed for good cause, and not due to the unavailability of counsel. Moreover, some of the cases had already been set beyond a date 60 days after petitioner's arraignment. Further, there were no cases set in the time period approximately 50 days after petitioner's arraignment, when petitioner's case would probably be tried. Thus, counsel advised the court that there were no cases which would interfere with his representation of petitioner, and that he would be both prepared and available to commence petitioner's trial within 60 days. [¶] Deputy Public Defender Swarth stated he would be willing to more fully discuss the status of each of the 17 cases to which the court had made reference, demonstrating why none of those cases would interfere with his being prepared to try petitioner's matter within 60 days. The court refused to hear such a further explanation . . . ." As will be noted, the problem that has arisen relates to the latter under oath claim that Peter Swarth, the deputy public defender, had offered to provide background concerning the 21 pending cases and the respondent court refused to hear any explanation. As the presiding justice, I denied a stay request indicating in a brief order it was unclear whether there had been compliance with rule 56(c) of the California Rules of Court which requires a declaration detailing what occurred in the

The exercise of discretion in this case is tested by the entire statutory and constitutional scheme pertinent to speedy trial rights and appointment of the public defender. In construing provisions of the Constitution and statutes an appellate court applies the following standard of review: "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] In the case of a constitutional provision adopted by the voters, their intent governs. [Citations.] To determine intent, ' "The court turns first to the words themselves for the answer." ' [Citations.] 'If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).' [Citation.]" (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934]; accord, *Freedom Newspapers, Inc.* v. *Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218].) However, the literal meaning of a statute must be in accord with its purpose as our Supreme Court noted in *Lakin* v. *Watkins Associated Industries* (1993) 6 Cal.4th 644, 658-659 [25 Cal.Rptr.2d 109, 863 P.2d 179], as follows: "We are not prohibited 'from determining whether the literal meaning of a statute comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute. The meaning of a statute may not be determined from a single word

respondent court accompany the writ petition, unless a reporter's transcript is contemporaneously filed with the writ petition. On April 12, 1996, in an effort to promptly clarify matters, a deputy public defender other than the one who verified the petition filed an under-oath declaration. The April 12, 1996, declaration explained that the description of what occurred in the respondent court on April 2, 1996, in the body of the verified petition was intended to comply with rule 56(c) of the California Rules of Court. The under-oath declaration also added several minor points to what was related in the verified petition so as to fully comply with rule 56(c) of the court rules. Later, on April 16, 1996, the reporter's transcript of the April 2, 1996, proceedings was filed with this court. That transcript revealed that the respondent court exercised its discretion based on 21 pending cases, not the 17 adverted to in the body of the petition verified under oath by a deputy public defender. More importantly, the reporter's transcript reveals that the respondent court never cut off Mr. Swarth or otherwise refused to hear an explanation concerning the 21 cases. At oral argument, the question of why the verified petition which was intended to serve as the California Rules of Court rule 56(c) declaration differed from the transcript was raised. The deputy public defender candidly indicated it was an inadvertent error made in the haste to prepare and file the petition. I am prepared, given the totality of the circumstances and the commendable candor of the deputy public defender at oral argument, to accept the explanation. However, verified writ petitions are filed under oath and their factual contents, particularly when presented in an effort to comply with rule 56(c) of the court rules, must be entirely without exception the complete truth. There are no exceptions to that rule, none. Practicing law is an uncompromisingly difficult profession. Conflicting demands of time and obligations to clients batter the personal and professional lives of lawyers. However, the press of business is never an excuse for inaccuracies in a lawyer's declaration. I am completely satisfied what occurred here was an inadvertence by two conscientious professionals, not an effort to mislead the court. If I thought otherwise, then professional, financial, and other legal sanctions may have been in order.

or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.] Literal construction should not prevail if it is contrary to the legislative intent apparent in the [statute.] . . .' [Citation.]" In *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299], our Supreme Court added: "The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.] An interpretation that renders related provisions nugatory must be avoided [citation]; each sentence must be read not in isolation but in the light of the statutory scheme [citation] . . . ." In evaluating the issues of statutory interpretation raised by the parties, an appellate court may not second-guess the wisdom of the policy decisions made by the voters. (*Rhiner v. Workers' Comp. Appeals Bd.* (1993) 4 Cal.4th 1213, 1226 [18 Cal.Rptr.2d 129, 848 P.2d 244]; *Delaney v. Superior Court, supra,* 50 Cal.3d at p. 805.)

Subject to the foregoing rules of constitutional and statutory interpretation, the petition should be denied because: of the adoption of Proposition 115 by the voters in the June 5, 1990, primary election; the respondent court had the duty to ensure the prompt trial of the present case; the respondent court had inherent power to control the proceedings; and the public defender was not available to try the present case within 60 days. The first pertinent body of constitutional and statutory law is Proposition 115. The preamble to Proposition 115 stated: "SECTION 1. (a) We the people of the State of California hereby find that the rights of crime victims are too often ignored by our courts and by our State Legislature, that the death penalty is a deterrent to murder, and that comprehensive reforms are needed in order to restore balance and fairness to our criminal justice system. [¶] (b) In order to address these concerns and to accomplish these goals, we the people further find that it is necessary to reform the law as developed in numerous California Supreme Court decisions as set forth in the statutes of this state. These decisions and statutes have unnecessarily expanded the rights of accused criminals far beyond that which is required by the United States Constitution, thereby unnecessarily adding to the costs of criminal cases, and diverting the judicial process from its function as a quest for truth. [¶] (c) The goals of the people in enacting this measure are to restore balance to our criminal justice system, to create a system in which justice is swift and fair, and to create a system in which violent criminals receive just punishment, in which crime victims and witnesses are treated with care and respect, and in which society as a whole can be free from the fear of crime in our homes, neighborhoods, and schools. [¶] (d) With these goals in mind, we the people do hereby enact the Crime Victims Justice Reform Act." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (June 5, 1990) Text of Proposed Law, Prop. 115, p. 33.) As part of the initiative,

the voters enacted article I, section 29 of the California Constitution which states, "In a criminal case, the People of the State of California have the right . . . a speedy . . . trial." Further, Proposition 115 enacted section 1049.5 which requires trials be commenced within 60 days of the arraignment absent a showing of good cause and which states: "In felony cases, the court shall set a date for trial which is within 60 days of the defendant's arraignment in the superior court unless, upon a showing of good cause as prescribed in Section 1050, the court lengthens the time. If the court, after a hearing as prescribed in Section 1050, finds that there is good cause to set the date for trial beyond the 60 days, it shall state on the record the facts proved that justify its finding. A statement of facts proved shall be entered in the minutes." As will be noted, section 1049.5 is directly pertinent to the determination of public defender availability in this case.

Moreover, when a case is set beyond the 60-day time period set forth in section 1049.5, the voters provided for expedited extraordinary writ review in section 1511 which states: "If in a felony case the superior court sets the trial beyond the period of time specified in Section 1049.5, in violation of Section 1049.5, or continues the hearing of any matter without good cause, and good cause is required by law for such a continuance, either party may file a petition for writ of mandate or prohibition in the court of appeal seeking immediate appellate review of the ruling setting the trial or granting the continuance. Such a petition shall have precedence over all other cases in the court to which the petition is assigned, including, but not limited to, cases that originated in the juvenile court. If the court of appeal grants a peremptory writ, it shall issue the writ and a remittitur three court days after its decision becomes final as to that court if such action is necessary to prevent mootness or to prevent frustration of the relief granted, notwithstanding the right of the parties to file a petition for review in the Supreme Court. When the court of appeal issues the writ and remittitur as provided herein, the writ shall command the superior court to proceed with the criminal case without further delay, other than that reasonably necessary for the parties to obtain the attendance of their witnesses. [¶] The Supreme Court may stay or recall the issuance of the writ and remittitur. The Supreme Court's failure to stay or recall the issuance of the writ and remittitur shall not deprive the respondent or the real party in interest of its right to file a petition for review in the Supreme Court."

Finally, in terms of the initiative, the Legislative Analyst's discussion in the voter pamphlet for Proposition 115 indicated: the proposition made "numerous significant and complex changes in criminal law and in the judicial procedures that must be followed in criminal cases"; provided the "people of California with the right to . . . a speedy . . . trial"; required

trial judges "to assign felony cases only to defense attorneys who will be ready to proceed within specified time limits"; and required "felony trials to be set within 60 days of the defendant's arraignment except upon a showing of good cause." (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (June 5, 1990) p. 32.)

Apart from the provisions of Proposition 115, there are other provisions of law that are applicable to a determination as to whether there was an abuse of discretion in the present case. Section 1050 states: "The welfare of the people of the State of California requires that all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time. To this end the Legislature finds that the criminal courts are becoming increasingly congested with resulting adverse consequences to the welfare of the people and the defendant. Excessive continuances contribute substantially to this congestion and cause substantial hardship to victims and other witnesses. Continuances also lead to longer periods of presentence confinement for those defendants in custody and the concomitant overcrowding and increased expenses of local jails. It is therefore recognized that the people, the defendant, and the victims and other witnesses have the right to an expeditious disposition, and to that end it shall be the duty of all courts and judicial officers and of all counsel, both for the prosecution and the defense, to expedite these proceedings to the greatest degree that is consistent with the ends of justice. In accordance with this policy, criminal cases shall be given precedence over, and set for trial and heard without regard to the pendency of, any civil matters or proceedings." Rule 227.7 of the California Rules of Court provides that continuance motions in criminal cases are "disfavored." Canon 3(B)(8) of the California Code of Judicial Conduct provides, "A judge shall dispose of all judicial matters fairly, promptly, and efficiently."

Moreover, California judges have inherent powers to control proceedings. Code of Civil Procedure section 177 provides that judges have the authority to "preserve and enforce order" in her or his presence when engaged in official duties. Code of Civil Procedure section 128 subdivision (a) states in part: "(a) Every court shall have the power to do all of the following: [¶] (1) To preserve and enforce order in its immediate presence. [¶] (2) To enforce order in the proceedings before it, or before a person or persons empowered to conduct a judicial investigation under its authority. [¶] (3) To provide for the orderly conduct of proceedings before it, or its officers. . . . [¶] (5) To control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." Our Supreme Court has described the inherent power of the judicial branch as follows: "We have

often recognized the 'inherent powers of the court . . . to insure the orderly administration of justice.' (*Hays* v. *Superior Court* (1940) 16 Cal.2d 260, 264 . . . ; see also *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 635-636 . . . [discussing 'supervisory or administrative powers which all courts possess to enable them to carry out their duties']; *Millholen* v. *Riley* (1930) 211 Cal. 29, 33-34. . . .) Although some of these powers are set out by statute ([Code Civ. Proc.,] § 128, subd. (a)), it is established that the inherent powers of the courts are derived from the Constitution (art. VI, § 1 [reserving judicial power to courts]; see *Millholen, supra,* 211 Cal. at p. 34; *Rice* v. *Superior Court* (1982) 136 Cal.App.3d 81, 89 . . .), and are not confined by or dependent on statute (see, e.g., *Bauguess, supra,* 22 Cal.3d at pp. 635-636; *Peat, Marwick, Mitchell & Co.* v. *Superior Court* (1988) 200 Cal.App.3d 272, 287 . . . , cf. *James H.* v. *Superior Court* (1978) 77 Cal.App.3d 169, 175-175 . . . , [court has inherent power to hold competency hearing despite absence of express statutory authorization for such hearing].)" (*Walker* v. *Superior Court* (1991) 53 Cal.3d 257, 266-267 [279 Cal.Rptr. 576, 807 P.2d 418]; accord, *Bloniarz* v. *Roloson* (1969) 70 Cal.2d 143, 147-148 [74 Cal.Rptr. 285, 449 P.2d 221]; *Lyons* v. *Superior Court* (1955) 43 Cal.2d 755, 757-758 [278 P.2d 681]; *Brydonjack* v. *State Bar* (1929) 208 Cal. 439, 442 [281 P. 1018, 66 A.L.R. 1507].)

In my view, given the foregoing body of law and the facts in this case, the respondent court did not abuse its discretion in concluding that the Office of the Los Angeles County Public Defender was in this one case unavailable to represent defendant within the statutorily mandated time for trial. Section 987.2, subdivision (e)[3] which, as my colleagues correctly note, is the provision of law which creates the duty to appoint the public defender in Los Angeles County provides for two exceptions. The first exception exists when the public defender is unavailable. Section 987.2, subdivision (e) states in part, "*In the event that the public defender is unavailable* and the county has created a second public defender and contracted with one or more responsible attorneys or with a panel of attorneys to provide criminal defense

---

[3]Section 987.2, subdivision (e) states: "In a county of the first, second, or third class, the court shall first utilize the services of the public defender to provide criminal defense services for indigent defendants. In the event that the public defender is unavailable and the county has created a second public defender and contracted with one or more responsible attorneys or with a panel of attorneys to provide criminal defense services for indigent defendants, and if the quality of representation provided by the second public defender is comparable to the quality of representation provided by the public defender, the court shall next utilize the services of the second public defender and then the services of the county-contracted attorneys prior to assigning any other private counsel. Nothing in this subdivision shall be construed to require the appointment of counsel in any case in which the counsel has a conflict of interest. In the interest of justice, a court may depart from that portion of the procedure requiring appointment of the second public defender or a county-contracted attorney after making a finding of good cause and stating the reasons therefor on the record."

services for indigent defendants, and if the quality of representation provided by the second public defender is comparable to the quality of representation provided by the public defender, the court shall next utilize the services of the second public defender and then the services of the county-contracted attorneys prior to assigning any other private counsel." (Italics added.) The second exception, which is contained in the third sentence of section 987.2, subdivision (e), involves the existence of a conflict of interest. The third sentence of section 987.2, subdivision (e) states, "Nothing in this subdivision shall be construed to require the appointment of counsel in any case in which the counsel has a conflict of interest." The present case is controlled by the first or unavailability exception to the requirement that the public defender be appointed.

The respondent court could reasonably conclude that the public defender would not be available. To begin with, no other member of the public defender's office would be available to try the case. There is no dispute about that issue; defendant admits such. Further, the respondent court was obligated to set the case for trial within the 60 days. Section 1049.5 required the respondent court to set the case for trial "within 60 days of the defendant's arraignment" in the absence of good cause. Our Supreme Court has described section 1049.5 as follows, ". . . § 1049.5 . . . which provides felony trials shall take place within 60 days of arraignment." (*Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 299 [279 Cal.Rptr. 592, 807 P.2d 434].) On another occasion, our Supreme Court described section 1049.5 as follows: "Section 1049.5 is added to the Penal Code to provide for a trial of felony cases within 60 days of arraignment unless good cause is shown (and stated on the record) for lengthening the time." (*Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 345 [276 Cal.Rptr. 326, 801 P.2d 1077].) There is no issue concerning the absence of good cause, Mr. Swarth indicated he expected to try the case within the 60 days. Section 1049.5 was part of the Proposition 115 which the Legislative Analyst described as making "significant and complex changes in criminal law and in the judicial procedures that must be followed in criminal cases . . . ." Simply stated, this case was required by law to be tried within 60 days absent good cause which would permit trial beyond the statutory 60-day time period. There is not even any substantial evidence of good cause. Also, Mr. Swarth was assigned to try 21 cases to completion within the next 59 days. There was no evidence any of those cases were settleable without trial. There was no evidence a single case would be continued. In fact when asked how the cases would be tried, he responded, "But I'm ready to go. We're going to try them boom, boom, boom." When the respondent court calculated that the 21 cases could not be tried to completion within the 59-day time period, Mr. Swarth candidly admitted, "If that is your calculation, I'm not fast enough to do the math

right now. So I cannot speak to that." The respondent court then requested that Mr. Swarth determine if another deputy public defender could try the case within 60 days. Only after Mr. Swarth stated no other deputy public defender could try the case within the 60-day time limit did the respondent court make its final determination of unavailability and assign private counsel. It bears emphasis, defendant never offered to waive his right to have his trial commence within the 60-day time limit imposed by section 1382, subdivision (a)(2).

Given this record, I cannot find an abuse of discretion.[4] This is not a case of a judge who relied on "numbers alone" to exercise discretion. Such a large number of cases could not possibly have been tried within 60 days which included weekends and the Memorial Day holiday. Despite given his full responsibility to do so, Mr. Swarth could not contradict the respondent court's mathematical calculation which indicated that 21 felony trials could not competently, within the mandate of the United States and California Constitutions, be professionally conducted in 60 calendar days. Not a single other deputy public defender would be available to try the case—not a one. This scenario, when confronted by a highly experienced and knowledgeable judge who is a former criminal litigator, is not the utilization of numbers alone to make a decision. Rather, it is the exercise of judicial discretion. An

[4]There is decisional authority concerning the power to remove counsel who cannot try the case at the appointed time. For example, in *People* v. *Dowell* (1928) 204 Cal. 109, 113-114 [266 P. 807], section 1050, as it was in effect at that time (Stats. 1927, ch. 600, § 1, p. 1036) required that the case be tried within 30 days of the entry of the defendant's plea. In this regard, it is similar to current section 1049.5. The Supreme Court held: the provisions of then section 1050 created a duty to set the case for trial within the statutorily mandated 30 days; there was "no merit whatsoever" to the contention that other counsel, who was properly prepared, should not be required to try the case; and the absence of the initially retained attorney did not injuriously affect any substantial rights of the defendant. (204 Cal. at pp. 113-114.) *Dowell* is pertinent because it holds that a time period specified in the Penal Code for trying a case creates a duty to do so and that no abuse of discretion occurs when retained counsel was relieved. Further, Court of Appeal decisions have upheld orders relieving defense counsel because of an inability to try the case at the appointed time. (E.g., *People* v. *Strozier* (1993) 20 Cal.App.4th 55, 62 [24 Cal.Rptr.2d 362] [trial court had discretion to remove privately retained counsel after "numerous continuances"]; *Maniscalco* v. *Superior Court* (1991) 234 Cal.App.3d 846, 849-850 [285 Cal.Rptr. 795] [injury to defense counsel warranted removal after seven year delay in bringing the case to trial]; *Stevens* v. *Superior Court* (1988) 198 Cal.App.3d 932, 936-937 [244 Cal.Rptr. 94] [appointed counsel's trial schedule caused repeated delays]; *People* v. *Lucev* (1986) 188 Cal.App.3d 551, 556-557 [233 Cal.Rptr. 222] [one-and-one-half-year delay after arraignment because of congested calendar of deputy public defender].) Each of these cases involves removal of counsel rather than the statutorily mandated duty of the trial court subject to the two exceptions described in the body of this dissenting opinion to appoint the public defender. Nonetheless, they are relevant insofar as they relate the power of a court when counsel is unavailable to relieve the attorney. None of the foregoing decisional authority undercuts the power of an arraigning judge to refuse to appoint a deputy public defender when she or he will be unable to try the case within the statutorily mandated period in section 1049.5.

abuse of discretion exists under the following circumstances: "That discretion, however, ' "is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' [Citations.]" (*Carroll* v. *Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 898 [187 Cal.Rptr. 592, 654 P.2d 775]; accord, *People* v. *Warner* (1978) 20 Cal.3d 678, 682 [143 Cal.Rptr. 885, 574 P.2d 1237].) I cannot find the cautious and deliberate effort to comply with the statutory requirement that this case be tried within 60 days by ensuring that the public defender's office have a lawyer who would be available was: "capricious or arbitrary"; discretion exercised "*ex gratia*"; a decision rendered adverse to the spirit of the law; or a ruling which impeded or defeated the ends of substantial justice. Contrary to defendant's contention, that never happened.

For these reasons, I would deny the petition on the merits as well as on mootness grounds.

A petition for a rehearing was denied June 24, 1996, and petitioner's application for review by the Supreme Court was denied September 25, 1996.