Filed 12/11/23  In re T.P. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re T.P., Jr., a Person Coming Under the Juvenile Court Law. | C098682 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2022-0000101) |
| Plaintiff and Respondent, | |
| v. | |
| T.P., Sr., | |
| Defendant and Appellant. | |

T.P., Sr. (father), appeals from the orders issued following the 12-month permanency review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[1] in the juvenile dependency case of his minor child, T.P., Jr. (T.P.).  Father's sole contention on appeal is that the San Joaquin County Human Services Agency (Agency) and the juvenile court

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law. As we next explain, because findings regarding the application of the ICWA were neither made at the hearing from which father appeals, nor at any point earlier in the case, the sole claim on appeal is premature. Consequently, the appeal must be dismissed.

### FACTUAL AND PROCEDURAL BACKGROUND

Because the issue on appeal is limited to ICWA compliance, we dispense with a detailed recitation of the underlying facts and procedure. It suffices to say that father and A.A. (mother) have one child together, T.P. When T.P. was born in February 2022, father was incarcerated, mother tested positive for opiates, and T.P. was experiencing withdrawal symptoms. T.P. was taken into protective custody, and detained in March 2022. T.P. became a dependent of the juvenile court due to (among other things) his parents' substance abuse issues, which prevented them from adequately caring for and protecting him and placed him at risk of harm. T.P. was removed from his home and placed with his maternal grandmother,[2] and reunification services were ordered for mother and father.

As for the ICWA, mother told a social worker in February 2022 that she had "Native Ancestry." However, mother did not know the tribe or whether any member of her family was a registered member of a tribe. Father told the social worker he had no known Native American ancestry. The Agency's March 2022 detention report included this information and noted that father was in foster care most of his life and mother was adopted by her paternal aunt when she was three months old. The detention report also stated: "Claim of Native American Heritage, but no sufficient information to be 'reason

---

[2] Mother was adopted by her father's sister (i.e., paternal aunt). Thus, T.P. was placed with his maternal great-aunt. In the record, she is referred to as T.P.'s maternal grandmother.

to know' the child/family is ICWA eligible. Notice will be given by ICWA-30 after the [juvenile dependency] petition is filed."[3] The appellate record, however, does not include any ICWA-030 form.

In March 2022, two days before the detention report was filed, a social worker completed the "Indian Child Inquiry Attachment" form (ICWA-010(A) form). This form indicated that mother and father were asked about Native American ancestry, and that contact was made with the tribe(s) with which T.P. might be affiliated in order to establish if he was eligible for membership. However, no document was attached to the ICWA-010(A) form describing the specific tribe(s) contacted, the name(s) of the individual(s) contacted, or the manner of the contact(s).

At the detention hearing held several days later, father's counsel advised the juvenile court that father did not have any Native American ancestry. Mother's counsel made the same representation as to mother. There was no further discussion of the ICWA, including mother's initial report that she may have Native American ancestry or the results of any ICWA investigation referenced earlier by the social worker as described above.

The preamble to the written findings of the court in the minute order issued after the hearing stated that mother and father were advised of "Indian Heritage requirements" and given the "Parental Notification of Indian Status" form (ICWA-020 form), and that mother was ordered to disclose "the name(s) and locations of [her] absent parents" as well as "maternal and paternal relatives." The preamble to the court's findings also cursorily stated: "The MOTHER AND FATHER do not have any ICWA." However,

---

[3] The ICWA-030 form advises an Indian tribe that a child custody proceeding under the ICWA has been initiated for the identified child and informs the tribe about the case and the family background of the child so that the tribe can decide whether the child is a member or eligible for membership in the tribe.

the court made no actual *findings or orders* related to application of the ICWA or the adequacy of the Agency's ICWA inquiry.

Around a week later, the Agency filed the ICWA-020 form mother had completed in February 2022, which indicated that mother may have Native American ancestry. As for "Indian Status," mother checked two boxes on the form, which stated as follows: (1) "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe"; and (2) "One or more of my parents, grandparents, or other lineal ancestors is or was a member of a federally recognized tribe." Mother did not identify any specific tribe she may be affiliated with or the name of any lineal ancestor that is or was a member of a federally recognized Indian tribe.

The Agency's May 2022 disposition report stated that there was "no reason to believe [T.P.] is an Indian Child within the meaning of the [ICWA]." The same statement was made in the Agency's status review reports filed in October 2022 (six-month status review) and March 2023 (12-month status review). The disposition report erroneously indicated that, in February 2022, mother *denied* any Native American ancestry in the ICWA-010 form she completed with the social worker and the ICWA-020 form she completed by herself.[4] Further, the status review reports erroneously stated that "mother signed an ICWA-020 form indicating no known Native American Ancestry."

At the contested 12-month permanency review hearing (§ 366.21, subd. (f)) held in May 2023, the juvenile court found that father was not ready to admit his substance abuse problem and terminated his reunification services. The court ordered that mother continue to receive reunification services and scheduled a review hearing (§§ 366.21,

---

[4] There is a typographical error in the Agency's disposition and status review reports. Each report erroneously states that mother completed an ICWA-020 form in February 2021 rather than February 2022. This error is immaterial to the resolution of the issue raised on appeal.

366.22) in September 2023. There was no discussion of the ICWA at the 12-month permanency review hearing, and there is nothing in the record showing that the Agency or court made any further inquiry about T.P.'s possible Native American ancestry after the detention hearing. There is no documentation indicating that the Agency questioned any of T.P's extended family members as to his possible Native American ancestry, including the maternal grandmother with whom T.P. was placed following the March 2022 jurisdictional hearing. Further, the court made no additional findings regarding the ICWA at or immediately after the 12-month permanency review hearing.

Father timely appealed.

## DISCUSSION

Father argues the matter must be conditionally reversed and remanded for further proceedings because there is insufficient evidence the Agency and juvenile court complied with the inquiry requirements of the ICWA and related California law. He claims the Agency and court disregarded mother's statement (in her ICWA-020 form) regarding her possible Native American ancestry, and the Agency failed to question extended family members to determine whether T.P. is an "Indian child" within the meaning of the ICWA. He adds that the court failed to ensure the Agency exercised due diligence prior to finding the ICWA did not apply.

The Agency makes several scattered arguments under a single argument heading claiming the Agency complied with the ICWA; we discuss the specifics of the Agency's arguments as necessary, *post*.

As we next explain, because the claim of ICWA error on appeal is not yet ripe for adjudication, the claim is premature. As the premature claim regarding compliance with the ICWA is the sole claim on appeal, the appeal must be dismissed.

5

# I

## *Applicable Legal Principles*

The "ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation," furthering "the federal policy ' "that, where possible, an Indian child should remain in the Indian community. . . ." ' " (*In re W.B.* (2012) 55 Cal.4th 30, 48.)

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) " '[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [child welfare] agency nor the court plays any role in making that determination,' " (*In re E.C.* (2022) 85 Cal.App.5th 123, 139-140), which often requires providing a tribe with extensive biographical data (i.e., information about ancestors and ancestry). (*In re T.G.* (2020) 58 Cal.App.5th 275, 294.)

The ICWA defines an "Indian child" as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see § 224.1, subd. (a) [adopting federal definitions].) Under the ICWA, an Indian tribe has the right to intervene or a qualified right to transfer a proceeding to its jurisdiction in certain involuntary actions involving an Indian child residing off the reservation. (25 U.S.C. § 1911; *In re Isaiah W.* (2016) 1 Cal.5th 1, 8.) To that end, the juvenile court and the child welfare agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (*In re Benjamin M.*

6

(2021) 70 Cal.App.5th 735, 741-742; Cal. Rules of Court, rule 5.481(a);[5] § 224.2, subd. (a).)

California law implementing the ICWA imposes requirements to protect the rights of Indian children and their families and tribes. (See §§ 224-224.6.) "[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the [child welfare] [a]gency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [a]gency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

"The duty of initial inquiry applies in every dependency proceeding." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678.) That duty begins at the commencement of a child custody proceeding and requires the juvenile court to ask each participant whether he or she knows or has reason to know that the child is an Indian child. (*Id*. at pp. 678-679; see also rule 5.481(a).)

The duty of further inquiry is triggered when there is " '[r]eason to believe that an Indian child is involved.' " (*In re Ricky R*., *supra*, 82 Cal.App.5th at p. 679.) The "reason to believe" standard is broadly interpreted (*In re M.E.* (2022) 79 Cal.App.5th 73, 84), and "exists whenever the court or [child welfare agency] has 'information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe.' [Citation.] The required further inquiry includes

---

[5] Further rule references are to the California Rules of Court.

interviewing the parents and extended family members to gather the information necessary for an ICWA notice, contacting the Bureau of Indian Affairs and State Department of Social Services to gather the names and contact information of the pertinent tribes, contacting the tribes, and contacting any other person who may reasonably be expected to have information regarding the child's membership status or eligibility." (*In re Ricky R.*, at p. 679; see § 224.2, subd. (e) [describing the required duty to make further inquiry and what that means]; rule 5.481(a)(4) [explaining that further inquiry includes, among other things, interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of section 224.3].)

When there is reason to believe a child is an Indian child within the meaning of the ICWA, the juvenile court must ultimately determine whether the child welfare agency (1) conducted "proper and adequate further inquiry," and (2) provided the court with a sufficient factual basis upon which to conclude that the child was or was not an Indian child. (*In re K.H.* (2022) 84 Cal.App.5th 566, 605.) "If the court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that the [ICWA] does not apply to the proceedings. . . . The court shall reverse its determination if it subsequently receives information providing reason to believe that the child is an Indian child and order the social worker or probation officer to conduct further inquiry pursuant to Section 224.3." (§ 224.2, subd. (i)(2).)

In its filings with the juvenile court, the child welfare agency must, on an ongoing basis, include "a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes." (Rule 5.481(a)(5).) The duty to develop information concerning whether a child is an Indian child rests with the court and the child welfare agency, not the parents or members of the

8

parents' families.  (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 431; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 785.)

A juvenile court must make findings as to the applicability of the ICWA and its failure to do so is error.  (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.)  A finding that the ICWA does not apply includes an implicit finding that the child welfare agency fulfilled its duty of inquiry.  (*D.S. v. Superior Court* (2023) 88 Cal.App.5th 383, 390.)  A court errs in making a finding that the ICWA does not apply without first ensuring that the child welfare agency has made an adequate inquiry under the ICWA and related California law.  (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 431.)

A parent's failure to object to deficiencies in the ICWA investigation does not preclude the parent from raising the issue for the first time on appeal.  (*In re K.R.* (2018) 20 Cal.App.5th 701, 706.)  We review claims of inadequate ICWA inquiry for substantial evidence (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430; § 224.2, subd. (i)(2) [ICWA findings "subject to reversal based on sufficiency of the evidence"]), which requires us to determine if reasonable, credible evidence of solid value supports the juvenile court's order.  (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.)  But where the facts are undisputed, we independently determine whether the ICWA's inquiry requirements have been satisfied.  (*Ibid.*)

II

*Analysis*

Embedded within the Agency's responsive brief is the unheaded cursory contention that the juvenile court did not make a finding as to the applicability of the ICWA and, consequently, this issue is "not ripe for review on appeal."  Father does not address this contention in his briefing, even in reply, and nowhere does either party's briefing specify a precise order or orders regarding applicability of the ICWA as the subject of the request for remand.

9

We see no appealable order regarding the ICWA, or even an actionable finding, in this case. The minute order issued after the detention hearing contains the notation that the parents "do not have any ICWA," but that is not a finding made by the juvenile court. Further, as outlined above, the notation is not supported by the record, which clearly indicates mother had claimed Native American ancestry at various points throughout the case beginning *prior to the detention hearing*. This is despite errors in the Agency's reports that suggest otherwise, which we have also outlined above.

Because the juvenile court made no final ruling at or before the challenged hearing as to whether the ICWA applied to the proceedings, father's claim is premature. That is, any ICWA issues are not yet ripe for review. " 'Ripeness' refers to the requirements of a current controversy." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.) An issue is not ripe for review unless and until it is "sufficiently concrete to allow judicial resolution even in the absence of a precise factual context." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170; see *id*. at pp. 170-172.) Because T.P.'s dependency case is still ongoing, any perceived deficiencies with ICWA inquiry and noticing may still be resolved (see *In re M.R.* (2017) 7 Cal.App.5th 886, 904 [ICWA claim was premature where no final ICWA ruling was made at dispositional hearing]); here, there remains much to resolve.

Mother's initial statement to the social worker in February 2022 regarding her possible Native American ancestry was sufficient to establish a reason to believe T.P. is an Indian child within the meaning of the ICWA, thereby triggering a duty to conduct a further inquiry. (*In re C.L.* (2023) 96 Cal.App.5th 377, 381; *In re E.C.*, *supra*, 85 Cal.App.5th at p. 147; *In re D.S., supra*, 46 Cal.App.5th at p. 1052.) While the record reflects that the social worker undertook an ICWA investigation in response to mother's claim of possible Native American ancestry, which included contacting certain (unidentified) tribe(s) with which T.P. might be affiliated, the Agency failed to provide the court with any details as to its investigation including any documentation of the

10

results.  The Agency made no mention of the ICWA investigation at the March 2022 detention hearing (or any subsequent hearing), and mother's counsel advised the court, without elaboration, that mother did not have any Native American ancestry.

" 'Counsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330.)  The juvenile court did not receive such aid here.

Around a week after the detention hearing, the Agency filed mother's ICWA-020 form, which indicated that she may have Native American ancestry.  This filing, which was never discussed by the parties or the court at any subsequent hearing, was sufficient to trigger a duty on the part of the court to conduct a further inquiry and make a finding as to whether the ICWA applied based on the results of that inquiry.  (See *In re S.R.* (2021) 64 Cal.App.5th 303, 310, 315-316 [duty of further inquiry triggered following filing of ICWA-020 forms by the maternal grandparents indicating possible Native American ancestry, even though parents had previously submitted ICWA-020 form denying knowledge of any such ancestry].)  This does not appear to have been done as of the time of this court's review.  The record does not disclose that the Agency inquired with *any* extended family member about T.P.'s possible Native American ancestry, even though the Agency (as it concedes on appeal) had contact with maternal and paternal relatives.  Nor does the record reflect that the juvenile court has ensured the Agency's compliance with the laws we have outlined at length above.

However, any compliance issues remain before the juvenile court, and are not yet ripe for our review.  We trust the court, the Agency, and all counsel will perform their respective duties going forward.

11

## DISPOSITION

The appeal is dismissed.


|                      |
|----------------------|
| /s/                  |
| Duarte, Acting P. J. |


We concur:


|            |
|------------|
| /s/        |
| Renner, J. |


|            |
|------------|
| /s/        |
| Krause, J. |