Filed 1/8/24  In re H.P. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re H.P., a Person Coming Under the Juvenile Court Law. | C097469 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>C.P. et al.,<br><br>        Defendants and Appellants. | (Super. Ct. No. JV2022109) |

Appellants C.P. (mother) and V.P. (father) (collectively parents) appeal from various juvenile court orders relating to the dependency of minor H.P.

Mother filed a notice of appeal from the juvenile court's October 26, 2022 jurisdictional and dispositional orders.  Mother also filed a notice of appeal on

February 6, 2023, purporting to appeal from the juvenile court's November 9, 2022[1] orders authorizing ongoing hair follicle testing and transitioning the minor into the care of the maternal grandmother, and from the December 7, 2022 "[d]ispositional order and case plan." But mother's notice of appeal is not timely as to the November 9, 2022 orders since her notice of appeal was not filed within the requisite 60 days. (Cal. Rules of Court, rule 8.406.) Accordingly, we shall dismiss her appeal from those orders. Mother's notice of appeal is timely as to the December 7, 2022 review hearing at which a case plan was adopted. Her sole contention on appeal is that the juvenile court and respondent Yolo County Health and Human Services Agency (Agency) failed to comply with the inquiry and notice requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).

Father filed a timely notice of appeal from the juvenile court's October 26, 2022 dispositional orders, contending the juvenile court improperly bypassed him for reunification services. Father also joins in mother's argument that the juvenile court and Agency failed to comply with the ICWA.

We agree with respondent that the ICWA argument is premature because the juvenile court has yet to make an ICWA finding; we therefore dismiss mother's remaining appeals. We disagree with father's contention that he was improperly bypassed for reunification services and affirm the juvenile court's October 26, 2022 orders and judgment.

FACTUAL AND PROCEDURAL BACKGROUND

We provide an abbreviated summary of the facts, with an emphasis on the facts relevant to father's contention that he was improperly bypassed for reunification services

---

[1]     Mother's notice of appeal actually indicates she is appealing from November 9, 2023 orders, but reference to 2023 is clearly unintentional since the notice was filed nine months before that date.

and omitting most facts relating only to mother. The facts related to the ICWA are included in our discussion of that issue.

The Agency obtained a protective custody warrant after the premature newborn's meconium test was positive for critical levels of THC and mother had continued use of prescribed oxycodone throughout her pregnancy. Mother also had mental health issues and parents' had a history of failing to reunify with their children. Mother reported being diagnosed with schizophrenia but claimed it was only to receive Supplemental Security Income benefits and avoid homelessness, and she reported no mental health symptoms. Father denied mother had any mental health concerns. Parents were married and saw each other daily, but they did not live together. Father was mother's in-home support services provider and spending five to six hours each day caring for mother's general needs.

In July 2022, the Agency filed a Welfare and Institutions Code[2] section 300 petition on behalf of the minor, alleging parents' failure or inability to protect the minor generally and due to mental illness, developmental disability, or substance abuse. Under the failure to protect provisions, the petition factually alleged: (1) mother has a history of untreated "mental health issues from which she has failed and/or refused to rehabilitate[] and which impair her ability to provide adequate care and supervision," including diagnoses of schizophrenia, depression, anxiety, and bipolar disorder, that she is not currently taking any medications, and that her mental health issues were the primary concern in two previous dependency cases involving the minor's siblings, V.H. and G.P.; (2) the minor is at risk due to father's inability or unwillingness to protect her from mother's mental health issues because he refuses to acknowledge mother's mental health issues and allows mother to be the minor's primary caregiver. The petition further

---

alleged that father had failed to complete reunification services in sibling V.H.'s dependency case and had been bypassed for reunification services in sibling G.P.'s dependency case due to father's alcohol abuse and his domestic violence with mother. Father had presented with slurred and incoherent speech while speaking with the social worker a few days before the petition was filed and admitted that he had taken no measures to address the issues from the siblings' cases, which the Agency alleged placed the minor at risk.

The section 300 petition further alleged, under the provision for abuse of sibling, that sibling V.H. had been "placed into protective custody due, in part, to . . . mother's untreated mental health [issues] and her inability to provide adequate care of the sibling due to those mental health issues," parents' domestic violence, and "father's untreated alcohol issues." The petition alleged parents had been offered reunification services but failed to reunify. Reunification services were terminated, and V.H. was placed in a guardianship in September 2018. The section 300 petition further alleged, under the provision for abuse of sibling, that thereafter, sibling G.P. had been "placed into protective custody . . . due, in part, to . . . mother's untreated mental health [issues], father's failure to protect,"[3] and "parents' failure to reunify with [V.H.]" Parents were not offered reunification services in that case and parental rights were terminated in July 2019.[4] The juvenile court set the matter for a combined jurisdiction/disposition hearing.

The Agency's jurisdiction/disposition report recommended bypassing parents for reunification services based on their failure to reunify with the minor's siblings, and

---

[3] It was subsequently reported that, although the Agency had alleged father's failure to protect the sibling G.P. from mother's mental health issues, that allegation was not sustained by the juvenile court in that case.

[4] The petition also alleged mother had failed to reunify with a half sibling and had her parental rights to that half sibling terminated in 2009.

setting a section 366.26 hearing. In addition to other information about parents, the report included a summary of an August 2022 interview with father during which the social worker had questioned father about his substance use. Father reported he was "drinking less" but also reported that he drinks alone and " 'of course' he uses marijuana." He explained "that marijuana is his cigarette and he is not able to stop using." He had not been to any classes about alcohol use or participated in a 12-step program. He reported he was living part time with mother and denied any domestic violence between he and mother for the past five or six years. In a subsequent interview, father admitted to being an alcoholic and agreed to participate in substance abuse treatment and anger management groups.

In an addendum to the jurisdiction/disposition report, the Agency reported that parents had moved into a home together. On September 9, 2022, the social worker made an unannounced visit to parents' home. After multiple knocks, father opened the door and a strong odor of marijuana smoke came from the doorway. Father quickly closed the door but reopened it after the social worker knocked again. The social worker reported that the home smelled strongly of marijuana and was full of smoke. The social worker reviewed with father "the referrals made to services, including [a] substance use assessment, random drug testing, and anger management." Father stated he had not started any services and the social worker advised "that CommuniCare reported [father] had an intake for [a] substance use assessment on September 21, 2022. [Father] stated that he could not remember when his appointment was scheduled." The social worker noted that father appeared at the time to "be under the influence of marijuana, with slow speech and very red eyes. [Father] received the referral list and signed the receipt." The social worker advised that "parents need[ed] to follow through with the substance use assessment[s] and random testing and abstain from smoking marijuana."

Two social workers made another unannounced visit to parents' home on September 20, 2022. It was discovered during that meeting that father had not attended

5

an earlier scheduled intake appointment at CommuniCare but was still scheduled for September 21, 2022.  After father reported that he had not signed up for random testing, the social workers advised him that he needed to do so and to complete the substance abuse assessment, start anger management services, and continue attending visitation. Father reported he did not know when he last used alcohol, recalling only that it had been "a long time" ago, but acknowledged he had been using marijuana.  During a telephone interview 10 days later, he reported he last used alcohol over two years prior and had stopped using marijuana a month and a half ago.  He confirmed he had been on a SCRAM bracelet in the past, which he wore for a year.

The Agency reported that in addition to a referral for anger management, the Agency had referred father for random drug testing at CommuniCare on August 23, 2022.  An additional referral was sent on September 9, 2022.  Father was also referred for a substance use assessment through CommuniCare.  In a second addendum report, the Agency provided and summarized 11 police reports documenting law enforcement contact with parents between September 2019 and July 2022.  The Agency continued to recommend the juvenile court sustain the allegations in the petition, declare the minor a dependent child of the court, order the minor removed from parental custody, and bypass parents for reunification services pursuant to section 361.5, subdivision (b)(10) and (b)(11).

The juvenile court held a combined jurisdiction/disposition hearing on October 26, 2022.  The social worker, mother, and father testified, including testimony about the efforts parents had made, or not made, to address the Agency's concerns.  The Agency then argued that both parents should be bypassed for reunification services.  In making this argument, the Agency argued that father's domestic violence and alcohol abuse were concerns in sibling V.H.'s earlier case and father continues to drink alcohol and use marijuana heavily, had "failed to engage in substance abuse treatment services," and failed to complete anger management services.

6

Mother's counsel twice emphasized that it was the Agency's burden to not only prove the basis for the bypass of reunification services, but that parents had not made reasonable efforts to address the issues in the siblings' cases. Counsel argued mother had made reasonable efforts to address the previous issues. Father's counsel acknowledged that "one of the concerns that was raised at the prior case and during this one is [father's] use of illicit substances and/or alcohol at the time his case was closed" but argued that he "was doing the best that he could" in engaging "in some form of support and encouragement" for sobriety. Father's counsel argued that his efforts were reasonable and, in any event, reunification services would be in the minor's best interests because the minor was very young and father had, at times, shown some insight in anger management and his need to address his substance abuse. With respect to disposition, the minor's counsel noted that father had not done much to address his substance abuse and was still actively using alcohol and marijuana. Arguing that both parents had serious mental health, domestic violence, and substance abuse issues, the minor's counsel requested parents be bypassed for reunification services.

The juvenile court sustained the allegations in the petition and then turned to disposition. It first discussed whether the minor should be returned home to parents and concluded that parents' mental health, substance abuse, and other concerns from the siblings' cases had not been sufficiently addressed so as to allow the court to return the minor to parents' home. It then turned to the provision of reunification services and concluded that mother had made reasonable efforts to address the reasons the minor's siblings had been removed but that father had not. It bypassed father for reunification services but ordered services be provided to mother. It adopted a reunification case plan at the subsequent December 7, 2022 hearing.

7

## DISCUSSION

### I

### *Denial Of Reunification Services For Father*

Father contends the juvenile court's order denying services under section 361.5 is not supported by substantial evidence because (1) the required connection of reasons for prior and current removal was not shown, and (2) the juvenile court improperly shifted to him the burden of proof regarding the reasonableness of his efforts to treat the problems resulting in the minor's siblings' cases. We disagree with father on both points.

When a child is removed from the parent's home, reunification services may be offered to the parent " 'in an effort to eliminate the conditions leading to loss of custody and facilitate reunification of parent and child. This furthers the goal of preservation of family, whenever possible. [Citation.]' [Citations.] Section 361.5, subdivision (b) sets forth certain exceptions—also called reunification bypass provisions—to this 'general mandate of providing reunification services.' " (*In re Allison J.* (2010) 190 Cal.App.4th 1106, 1112.) "When the court determines a bypass provision applies, the general rule favoring reunification is replaced with a legislative presumption that reunification services would be ' "an unwise use of governmental resources." ' " (*Ibid.*)

"As relevant here, services may be denied if the [juvenile] court finds by clear and convincing evidence either '[t]hat the court ordered termination of reunification services for any . . . siblings of the child because the parent . . . failed to reunify with the . . . sibling[s] after the . . . sibling had been removed from that parent . . . and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the . . . sibling of that child from that parent . . . .' or '[t]hat the parental rights of a parent over any . . . sibling of the child had been permanently severed, and this parent is the same parent described in [section 361.5,] subdivision (a), and that, according to the findings of the court, this parent has not subsequently made a reasonable effort to treat the problems that led to removal of the . . .

sibling of that child from the parent.' (§ 361.5, subd. (b)(10) & (11).)" (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.)

We review the juvenile court's order denying reunification services under section 361.5, subdivision (b) for substantial evidence. (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 913-914 & fn. 3; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995-996.)

A

*Problems That Led To The Removal Of H.P.'s Siblings*

Father contends the required connection between the prior and current reasons for removal are not present in this case because the jurisdictional allegations relating to father in sibling V.H.'s case were based on his domestic violence, and the jurisdictional allegations relating to father in sibling G.P.'s case were based on father's general neglect of V.H. due to domestic violence. He argues that domestic violence was not an ongoing concern in the instant case and that, although substance abuse services were ordered in sibling V.H.'s case, the Agency had not alleged a separate count that father was unable to care for V.H. as a result of his substance abuse. Thus, he argues that the Agency's decision not to separately allege father's failure or inability to provide regular care due to substance abuse for V.H. and, likewise, for the minor, results in a failure of proof " 'that father received services in the prior case for the problems manifest in the present case.' "

There is, however, no requirement that the " 'problems that led to removal' " must be alleged in the prior petitions resulting in removal. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 108.) As explained in *In re Lana S.*, it is sufficient if the problem preventing reunification was a "substantial component" of the previous service plan. (*Ibid.*) Thus, in *In re Lana S.*, mother's drug abuse could be considered, even though it had not been alleged in previous petitions. (*Ibid.*)

Father argues the Agency's failure to provide a copy of father's reunification plan in V.H.'s case is fatal to meeting its burden to show that father's substance abuse was a

9

problem leading to V.H.'s removal. While the reunification plan was not provided, the Agency did present other evidence that father's substance abuse was, at least in part, a basis for V.H.'s continued removal and it established that the substance abuse services he was provided were a substantial component of his case plan. The Agency submitted a detention report, a combined jurisdiction/disposition report, two addendum reports, attachments to those reports, and some testimonial evidence to establish the problems that had led to the removal of V.H. and G.P., and father's efforts (or lack thereof) in treating those problems. At the Agency's request, the juvenile court also took judicial notice of the records in the siblings' cases and the Agency provided a summary of those records.[5]

The records reflected that V.H. had been ordered removed from parental custody in November 2016 and it is apparent that, in addition to mother's mental health and father's domestic violence issues, father's substance abuse was of concern in that case and the Agency's efforts to address it were detailed in the report. Indeed, one of the section 300 petition allegations stated mother had been evicted from her apartment due to father showing up at the apartment and pounding on the door, being intoxicated, and having "loud arguments" there. Father's alcohol use had also resulted in his incarceration, after having been placed on probation for a domestic violence offense. Parents had been ordered to participate in counseling, a domestic violence program, parenting education, substance abuse testing, and substance abuse assessments.

The Agency had referred father for an alcohol and drug assessment, an outpatient treatment program, and a walk-in intake appointment that he eventually attended in May 2017. Although he began participating in the substance abuse program recommended after his intake appointment, he attended only one group session in August 2017 and then

---

[5] The juvenile court took judicial notice of siblings V.H.'s and G.P.'s case files, as well as the half sibling A.L.'s case file. A.L. was mother's older child for whom parental rights had been terminated.

10

stopped attending. In October 2017, father agreed to re-engage in substance abuse treatment after reporting that he "used to drink two-thirty six packs per day [*sic*]" but had reduced his consumption to rewarding himself with about two beers on an occasion. He denied using any other drugs except for marijuana. Father was re-referred to complete an assessment, but father did not attend the scheduled assessment. Father's drug abuse testing was inconsistent—he failed to show for several substance abuse tests, tested positive for THC in several tests, and tested negative in several other tests. Additionally, after being discharged from his parenting education class for failure to attend, the program social worker reported concerns about father's sobriety. Father had also arrived at a visit with the minor appearing to have " 'had a drink before the visit,' " resulting in the caregiver ending the visit.

Thereafter, father did not participate in the newly required substance abuse assessment, although he had recently provided one clean drug test. The juvenile court ordered reunification services in V.H.'s case terminated and V.H. was placed in a plan of guardianship. These records established that father's substance abuse was an ongoing concern in V.H.'s case, substance abuse treatment was a substantial component of his case plan, and his substance abuse was at least part of the reason for V.H.'s continued removal from father's custody.

Likewise, the evidence also established that father's ongoing substance abuse continued to be a major concern and a barrier to maintaining custody of the minor in the instant case.

The petition filed on behalf of the minor alleged parents' failure or inability to protect the minor generally and also due to parents' mental illness, developmental disability, or substance abuse. In this regard, the petition did not distinguish between mother's and father's mental health or substance abuse issues. The petition factually alleged father had been slurring and incoherent during his conversation with the social worker and the social worker's report elaborated that "father has a long history of

11

substance abuse," "describes himself as an alcoholic[,] and has stated that he continues to use alcohol." He also self-reported that he regularly uses marijuana and "cannot stop using marijuana for any period longer than two weeks." During visits to parents' home, father was unable to remember when his assessment was scheduled, appeared to be under the influence of marijuana, and opened the door revealing heavy marijuana smoke. Father was also reportedly intoxicated during several of the 11 domestic disturbance calls over the four years between the termination of services in V.H.'s case and the disposition in the minor's case. Finally, the Agency expressed the opinion in the jurisdiction/disposition report that it would be unsafe to return the minor to parents because neither had addressed their mental health, anger management, and substance abuse related needs. Indeed, the juvenile court cited parents' continued mental health and substance abuse issues as the reasons the minor could not be returned to parents' home.

We find the evidence supports the finding that father's untreated substance abuse issues were similarly at the root of both his failure to reunify with sibling V.H. and the problems manifest and necessitating removal in the instant matter. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 995-996.) Father suffers from substance abuse issues that interfere with his ability to parent the minor and that prevented him from reunifying with sibling V.H. Because we find present the required connection of *problems* between the previous case involving sibling V.H. and this one, supporting the bypass of reunification services pursuant to section 361.5, subdivision (b)(10), we need not also address the evidence to support bypass pursuant to section 361.5, subdivision (b)(11) based on the connection to the problems in the previous case involving sibling G.P.

B

*Burden Of Proof*

Father also contends the juvenile court misallocated the burden of proof when deciding whether father had subsequently made reasonable efforts to treat the problems leading to the siblings' removal.

12

The juvenile court concluded, "[Father] does indeed have quite a bit going in his life. He has made some efforts in particular with regard to the couples' counseling, but the [c]ourt does not find that he made sufficient evidence to qualify for that exception." The juvenile court continued: "I don't find he has made those reasonable efforts. There may be reasons for that, but I just don't find that he has made sufficient reasonable efforts to qualify for that exception to bypass." Father reads these comments as demonstrating that the juvenile court shifted the burden of proof to him to show that he qualified for an exception to a bypass provision, rather than requiring the Agency establish that a bypass exception to providing reunification services applied. We disagree.

Read in its entirety, and considering mother's counsel having twice emphasized the Agency's burden of proof, the juvenile court's ruling appears to be simply an inartfully expressed conclusion that father had not made reasonable efforts to treat his prior issues, without regard to any reference to burdens of proof. Moreover, any possible misallocation of the burden of proof was not prejudicial here. It is clear that the juvenile court understood it had to determine if father had made "reasonable efforts" and concluded he had not. While the juvenile court expressed that mother's efforts were a "close call," the only efforts it found father had made were with regard to couple's counseling. It did not find father made any effort at all to address his substance abuse issues. Thus, it is not reasonably probable that, had the juvenile court expressly considered whether the Agency had presented clear and convincing evidence that father *had not* subsequently made a reasonable effort to treat the problems that led to the siblings' removal, rather than possibly considering whether father had shown he *had* made reasonable effort, the juvenile court would have ordered that father receive reunification services. (See *People v. Watson* (1956) 46 Cal.2d 818, 836.) We find no reversible error.

13

## II

### *The ICWA*

Prior to the detention hearing, the Agency reported it had asked mother, father, and the maternal grandmother if they were aware of any Native American ancestry. The maternal grandmother reported Cherokee ancestry and Cherokee was listed on the ICWA-010, although the maternal grandmother also noted that she knew the minor's siblings, V.H. and G.P., were not Indian children within the meaning of the ICWA. Father reported that he had heritage from Mexico and confirmed that the information obtained in sibling V.H.'s case was correct. In November 2016, in sibling V.H.'s case, mother had reported Cherokee ancestry and father had reported possible heritage with the Yaqui Nation and the Chichimica tribe (which was not a federally recognized tribe). At that time, father completed an ICWA-030 form with the assistance of the paternal aunt, Patricia P., and the Agency noticed the Yaqui and Cherokee tribes. In February 2017, the Agency received responses from all three Cherokee tribes that they would not be intervening. The juvenile court found V.H. not to be an Indian child. In July 2018 in sibling G.P.'s case, mother denied any Native American ancestry on behalf of herself and father. The juvenile court found G.P. not to be an Indian child. Recognizing that "this is a subsequent child, requiring a new inquiry," the Agency reported it "will continue efforts to inquire about Native American heritage."

In its jurisdiction/disposition report and addendum thereto, the Agency reported that mother had previously denied Native American ancestry but, based on the information it had received from the maternal grandmother and father, it had contacted, and later sent the ICWA notice via certified mail, to all three Cherokee tribes, the Pasqua Yaqui tribe, and the Bureau of Indian Affairs. All four tribes responded that the minor is not an Indian child or eligible for membership.

Although the juvenile court checked the box in the dispositional findings and orders indicating the social worker had inquired of parents and the maternal grandmother

14

whether the minor might be an Indian child, it did not make any findings about the applicability of the ICWA at or before the October 26, 2022 disposition hearing or the December 7, 2022 review hearing from which parents appeal.

Parents now complain that the juvenile court failed to make its own inquiry of parents upon parents' first appearance, failed to order parents to complete parental notification of Indian status forms in the instant case (ICWA-020), and failed to instruct the parties to inform the court if they subsequently received information providing reason to know the minor is an Indian child. (§ 224.2, subd. (c); Cal. Rules of Court, rule 5.481(a)(2)(c).) Parents also contend the Agency failed in its initial inquiry by not inquiring about Native American ancestry from other extended family members for whom it had some possible contact information, including the maternal grandfather, paternal grandmother, paternal grandfather, and several paternal aunts. Finally, they contend the ICWA notices sent to the tribes were missing some familial information they believe was likely within the knowledge of the grandparents or parents. We agree with the Agency that these ICWA claims on appeal are premature.

"The juvenile court and the [Agency] have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056; see also *In re K.M.* (2009) 172 Cal.App.4th 115, 118-119.) "[I]f that initial inquiry creates a 'reason to believe' the child is an Indian child, then the Agency 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' " (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052; italics omitted.)

Here, the Agency obtained some information about possible Native American ancestry from the maternal grandmother and father. It gathered some familial information and provided it to the relevant tribes. But at the time parents filed their notices of appeal, the juvenile court had yet to determine whether the Agency (and

15

juvenile court) had complied with the inquiry and notice provisions of the ICWA or whether the ICWA applies to the proceedings.

On appeal, we review the ICWA findings and orders for substantial evidence. (See *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) Here, because the juvenile court did not make a finding on the subject, we have no ICWA findings and orders to review and any remarks we would make on the adequacy of the ICWA compliance would be advisory. (See *People v. Buza* (2018) 4 Cal.5th 658, 693 ["We . . . abide by . . . a ' "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more" ' "].) In other words, because the juvenile court has not yet made a final ruling at or before the challenged hearing as to whether the ICWA applies to the proceedings, parents' claim of ICWA error is premature. That is, any ICWA issues are not yet ripe for review. " 'Ripeness' refers to the requirements of a current controversy." (*City of Santa Monica v. Stewart* (2005) 126 Cal.App.4th 43, 59.) An issue is not ripe for review unless and until it is "sufficiently concrete to allow judicial resolution even in the absence of a precise factual context." (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170; see *id.* at pp. 170-172.)

The minor's dependency case is still ongoing, so these and any other perceived deficiencies with the ICWA inquiry and noticing can *and should* be brought to the juvenile court's attention and may be resolved during the normal course of the ongoing dependency proceedings. (See *In re M.R.* (2017) 7 Cal.App.5th 886, 904 [ICWA claim was premature where no final ICWA ruling was made at dispositional hearing].) Indeed, " '[c]ounsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330.) Counsel's obligation to the court addresses mother's retort that waiting until the juvenile court has made an ICWA finding, and the issue is ripe for

review, "does not make sense . . . because the juvenile court may not do so in a timely manner" and it "discourages parties from raising any such errors at the earliest opportunity."  If at any time, a parties' counsel becomes aware that the juvenile court has failed to make necessary findings or orders, or that the agency has failed to make adequate inquiry under the ICWA, it is the obligation of counsel to *promptly* bring such matters to the attention of the juvenile court.

DISPOSITION

Mother's appeals are dismissed.  The juvenile court's October 26, 2022 orders and judgment are affirmed.


/s/_____
ROBIE, J.


We concur:


/s/_____
EARL, P. J.


/s/_____
BOULWARE EURIE, J.


17