Filed 9/11/24  In re C.R. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re C.R., a Person Coming Under the Juvenile Court Law. | C099694 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STKJDDP20230000014) |
| Plaintiff and Respondent, | |
| v. | |
| V.R., | |
| Defendant and Appellant. | |

In this case, the San Joaquin County Human Services Agency (Agency) made substantial efforts to investigate the minor's possible Native American ancestry and comply with the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law.  At the selection and implementation hearing, none of the parties opposed a finding that the Agency had complied with the ICWA and the ICWA did not apply.  The

1

juvenile court made the unopposed ICWA findings and orders and terminated parental rights.

Appellant V.R., mother of the minor, now appeals the termination of parental rights, arguing the Agency failed to interview several relatives and did not include information those relatives would have in the information it provided to the relevant tribes. (Welf. & Inst. Code, §§ 366.26, 395.)[1] While we do not condone counsel having expressly not objected to the ICWA compliance finding in the juvenile court and then raising it on appeal (see *H.A. v. Superior Court of San Joaquin County* (2024) 101 Cal.App.5th 956, 964-965 (*H.A. v. Superior Court*)), we are compelled to agree that remand is required in this circumstance. Accordingly, we will conditionally reverse the orders of the juvenile court and remand for further compliance with the ICWA.

## I. BACKGROUND

Given the limited scope of this appeal, we set forth only the facts necessary for the disposition of the briefed arguments and to inform the necessary actions on remand.

A hospital hold was placed on newborn minor C.R. on January 12, 2023, after the Agency obtained a protective custody order, and the Agency then filed a section 300 petition on behalf of minor. The detention report noted that the social worker asked mother and father about possible Native American ancestry. Father denied having any Native American ancestry and mother was uncooperative. The social worker further noted mother had earlier reported Cherokee ancestry in connection with a sibling's case.[2]

The parents made their first appearance at the January 31, 2023, jurisdiction hearing. Father denied Native American ancestry at the hearing. Mother said she had

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] The sibling was found not to be an Indian child in her dependency case. The juvenile court was provided with this information but not information as to what inquiry and notice was undertaken in the sibling's case.

Cherokee, Apache, Blackfoot, and Navajo ancestry. She reported that her grandmother (the minor's maternal great-grandmother) was the only family member with Cherokee ancestry and noted that none of her family members were registered with a tribe.

Mother completed a Parental Notification of Indian Status ICWA-020 form stating she is or may be a member, or eligible for membership with the Cherokee, Navajo, Blackfoot, and/or Apache tribes in Oregon. She identified her mother (the minor's maternal grandmother), Y.G., and her aunt (the minor's maternal great-aunt), L.A., as family members who are or were members of federally recognized tribes. She also provided telephone numbers for Y.G. and L.A. Father completed a Parental Notification of Indian Status ICWA-020 form that indicated no known Indian ancestry.

Mother reported being raised by both of minor's maternal grandparents, but primarily cared for by the maternal grandmother. She reported having a close relationship with both maternal grandparents but being closer to the maternal grandfather, with whom she spoke often. Mother also reported having a good relationship with her younger sibling, minor's maternal uncle.

The social worker spoke with the paternal grandmother, who had reported no Native American ancestry on the paternal side of the family but that she had heard Y.G. mention that the maternal side of the family had previously been registered with the Navajo tribe. The social worker spoke with the minor's maternal grandmother Y.G., who said *her* great-grandfather (now deceased) was born in Mexico and would tell stories about how they were part of the Native American tribes. Y.G. recalled the Apache, Navajo, and Blackfoot tribes as the possible tribes. She noted that the family was unsure of the bloodline, and they were not registered members.

On April 21, 2023, the Agency filed the ICWA notice that was sent to the Apache, Blackfeet, Cherokee, and Navajo tribes. The notice contained identifying information for mother and father, which included their address, date and place of birth, and listed mother's identified tribes. The notice also contained identifying information for the

3

maternal grandmother, which included her address, date and place of birth, and listed the identified tribes. Information for the maternal grandfather, maternal great-grandmother and grandfather, and maternal great-great-grandfather, who was deceased, included addresses and date and place of birth. The notice also contained the names of the maternal great-great-grandmothers, and maternal great-aunt, L.A. Additionally, the notice contained identifying information for the paternal grandmother, who was born in Mexico, paternal grandfather, paternal great-grandparents from Mexico, and paternal great-great-grandfather, paternal great-grandfather from Mexico, and paternal great-great-grandmothers from Mexico. The notice was sent to the Apache Tribe of Oklahoma, Blackfeet Tribe of the Blackfeet Indian Reservation of Montana, Cherokee Nation, Colorado River Indian Tribes of the Colorado Indian Reservation Arizona and California, Eastern Band of Cherokee Indians, Fort Still Apache Tribe of Oklahoma, Jicarilla Apache Nation, Mescalero Apache Tribe of the Mescalero Reservation, Navajo Nation, Ramah Navajo Chapter/Navajo Nation, San Carlos Apache Tribe of the San Carlos Reservation, Tonto Apache Tribe of Arizona, United Keetoowah Band of Cherokee Indians, White Mountain Apache Tribe of Fort Apache Reservation, and Yavapai-Apache Nation of the Camp Verde Indian Reservation, as well as, the Bureau of Indian Affairs (BIA). Attached to the notice were birth certificates for minor, mother, father, maternal grandparents, and paternal grandmother, as well as the section 300 petition.

In May 2023, the Agency filed an amended ICWA notice with the corrected mailing addresses and recipients for the Jicarilla Apache Nation, Mescalero Apache tribe, and the United Keetoowah Band of Cherokee Indians. The Agency's August 2023 section 366.26 report contained an ICWA status update. The report reflected that ICWA notice was initially sent to the Apache, Blackfoot, Cherokee, and Navajo tribes in April 2023. The report showed that the Navajo Nation responded to the ICWA notice on April 27, 2023, and noted that the tribe was in process of verifying the minor's enrollment or eligibility for enrollment.

On July 5, 2023, the Agency contacted the Navajo Nation and spoke with the tribe Social Worker and Navajo Nation Worker, Ms. Yazzie. Ms. Yazzie informed the Agency that based on the information provided, the minor, mother, and father were not eligible for enrollment and a letter would be sent. The report reflected that the amended ICWA notice was sent in May 2023. Additionally, responses were received from the Apache Tribe of Oklahoma, Fort Still Apache, Jicarilla Apache Nation, Tonto Apache Tribe of Arizona, White Mountain Apache Tribe of Fort Apache Reservation, Yavapai Apache Nation of the Camp Verde Indian Reservation, Blackfeet Tribe of the Blackfeet Indian Reservation of Montana, Cherokee Nation, and Ramah Navajo Chapter/Navajo Nation. No responses were received from the BIA, Mescalero Apache Tribe of the Mescalero Reservation, San Carlos Apache Tribe of the San Carlos Reservation, and Colorado River Indian tribes.

On August 2, 2023, the Agency filed a declaration of efforts to identify tribal affiliation. The attached response letters each indicated that the minor was not eligible for membership and not an Indian child as defined by the ICWA. The Agency noted that responses were not received from the BIA, Colorado River Indian tribes of the Colorado Indians Reservation, Mescalero Apache tribe of the Mescalero Reservation, and the San Carlos Apache tribe of the San Carlos Reservation. The social worker attached the response letters from the Kiowa Apache tribe of Oklahoma, Blackfeet Nation, Cherokee Nation, Eastern Band of Cherokee Indians, Fort Sill Apache tribe, Jicarilla Apache Nation, Navajo Nation, Ramah Navajo, Tonto Apache tribe, United Keetoowah Band of Cherokee Indians, White Mountain Apache tribe, and Yavapai Apache Nation. Additionally, the signed certified mail receipts from each of the noticed tribes, including the Colorado River Indian tribes of the Colorado Indians Reservation, Mescalero Apache tribe, and the San Carlos Apache tribe, were attached to the declaration.

On August 14, 2023, the Agency filed the amended declaration of efforts to identify tribal affiliation, which attached the Navajo Nation's response showing that the minor was not eligible for tribal membership.

At the August 23, 2023, section 366.26 hearing, the Agency requested the juvenile court find the ICWA does not apply and recommended termination of parental rights. The minor's counsel stated he had "[n]o objection as to the ICWA findings" and requested the court find notice was proper and the court proceed. Father's counsel stated she had "no objection to ICWA not applying" and would just oppose and object to the recommendation that parental rights be terminated. Mother's counsel stated she, too, had no objection to the ICWA not being applicable but objected to the recommendation that parental rights be terminated.

The juvenile court found the ICWA does not apply, adopted the recommended findings and orders, and terminated parental rights. Mother appealed.

## II. DISCUSSION

Mother contends the Agency and juvenile court failed to comply with the duty of initial inquiry as to the minor's Indian ancestry because the record does not reflect that the Agency interviewed all of the available extended relatives regarding their Indian Heritage. Specifically, mother contends the Agency should have contacted the maternal great-aunt, L.A., the maternal grandfather, J.S., the maternal great-grandfather A.B., and the maternal great-grandmother, E.C. Despite the extensive ICWA inquiry that appears from the record to already have been undertaken in this case, we are compelled to remand for the Agency to complete further duties under the ICWA.

### I.

Before addressing the substance of mother's contention that the inquiry under the ICWA was insufficient, we address the failure of mother's trial counsel to call the insufficiency to the attention of the juvenile court. Trial counsel was aware of at least some of the insufficiencies now raised on appeal, as some of these points were raised in

6

mother's writ petition, filed by her office–a claim we found premature because the juvenile court had not yet made an ICWA finding at that time.[3]  The writ petition identified maternal grandfather, J.S., as well as maternal uncle, R.G., and two paternal relatives as the family members the Agency had failed to contact.  When the juvenile court was subsequently asked to make the finding that the ICWA does not apply at the section 366.26 hearing, trial counsel expressly stated (after the minor's counsel and father's counsel did not object to the ICWA finding), "As to the mother, it would be the same thing [*sic*] no objection that the ICWA does not apply, and we would object and submit to the [section 366.]26."

Although, "in general, the forfeiture doctrine does not bar consideration of ICWA inquiry and notice issues not raised in the juvenile court," (*H.A. v. Superior Court, supra*, 101 Cal.App.5th at p. 965), we remind counsel that the nonforfeiture rule is *not* an invitation to sit idly by, aware of alleged deficiencies in ICWA compliance, while making no effort to remedy the matter in the juvenile court proceedings.  Such practice causes unreasonable delay, wastes appellate court resources, and fails to comport with counsel's duties as officers of the court.  (*Ibid*.)  We further remind counsel that " 'they are officers of the court, and while it is their duty to protect and defend the interests of their clients,

_____

[3] On our own motion, we take judicial notice of father's writ petition filed on May 17, 2023, contained in this court's file in Third District Court of Appeal case No. C098478. (Evid. Code, §§ 452, 459.)  We note that a reviewing court may give the parties to an appeal an opportunity to comment on the propriety of judicial notice taken on the reviewing court's own motion if the matter is of substantial consequence to the appellate opinion.  (Evid. Code, §§ 452, subd. (d) [judicial notice of court records], 459, subd. (c) [reviewing court may take judicial notice but must give parties the opportunity to comment under Evidence Code section 455 if the matter is of substantial consequence].)  The validity of taking judicial notice of the matters in case No. C098478 is clear.  However, if the parties are aggrieved by this judicial notice, we will entertain a motion for rehearing to give them an opportunity to address the matter before the decision becomes final.  (Evid. Code, § 459, subd. (d).)

the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330.) The juvenile court did not receive such aid here, resulting in an unreasonable delay in achieving permanence for this young minor. (See, e.g., *In re Sade C.* (1996) 13 Cal.4th 952, 993 [noting "the pointed and concrete harm that the child may suffer" from prolonged proceedings]; *In re A.R.* (2021) 11 Cal.5th 234, 249 ["dependent children have a critical interest in avoiding unnecessary delays to their long-term placement"]; *In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [children have a "compelling right[] . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child"].)

## II.

We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. (§ 224.2, subd. (i)(2); *H.A. v. Superior Court, supra*, 101 Cal.App.5th at p. 961; *In re Dezi C.* (Aug. 19, 2024, S275578) __ Cal.5th __ [p. 16] [2024 Cal. LEXIS 4634] (*Dezi C.*).) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C., supra,* __ [p. 27].) " 'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' " (*In re Kenneth D.* (Aug. 19, 2024, S276649) __ Cal.5th __ [p. 13] [2024 Cal. LEXIS 4633].)

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.*

8

(2019) 38 Cal.App.5th 655, 662.) The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) "Under ICWA's state analogue, the California Indian Child Welfare Act (Cal-ICWA), courts and child welfare agencies are charged with 'an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child' in dependency cases." (*Dezi C., supra,* __ Cal.5th __ [p. 1]; see § 224.2, subd. (a).; Cal. Rules of Court, rule 5.481(a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id.*, subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

It is the Agency's compliance with the second duty to make further inquiry regarding the possible Indian status of the child that is relevant here. Although the juvenile court did not make an express finding that there was reason to believe the minor may be an Indian child, after mother reported possible Navajo, Cherokee, Apache, or Blackfoot ancestry, the Agency reported it was following up with the family members and would provide notice to all tribes after the petition was filed. Thus, although the

9

Agency maintained there was no "reason to know" the minor was an Indian child, it impliedly represented it had "reason to believe" she might be and that it would make further inquiry pursuant to section 224.2, subdivision (e)(2)(A). We agree that, despite the substantial efforts made to contact family members and report information to the relevant tribes, the Agency did not fully satisfy its duty of further inquiry.

In addition to identifying several possible tribes, mother reported on her Parental Notification of Indian Status ICWA-020 form that her mother (the minor's maternal grandmother), Y.G., and her aunt (the minor's maternal great-aunt), L.A., are or were members of a federally recognized tribe. Mother provided the maternal grandmother's and maternal great-aunt's telephone numbers on the form. The Agency reported that it called the maternal grandmother to inquire about the ancestry, but it did not report contacting the maternal great-aunt, L.A. In reporting information to the tribes, the Agency reported L.A. may have Indian ancestry but indicated her address, birthdate and place were unavailable—information the Agency would likely have been able to provide had it contacted L.A. We cannot say that the failure to contact L.A., who was listed by mother as being a current or former member of a tribe, would not have provided further information relevant to the subject tribes in determining whether the minor may be an Indian child.

To the extent the Agency can contact other family members who might have further information about the minor's possible Indian ancestry, it should do so. For example, it appears from the record that the Agency had addresses for the maternal grandfather, J.S., the maternal great-grandfather, A.B., and the maternal great-grandmother, E.C. The Agency should then provide any relevant new or additional information to the subject tribes.

In light of the Agency's failure to contact maternal relatives, and particularly maternal great-aunt, L.A., and given the California Supreme Court's recent holding in *Dezi C.* that "an inadequate initial Cal-ICWA inquiry requires conditional reversal with

10

directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with [California Rules of Court,] rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3," (*Dezi C., supra*, ___ Cal.5th ___ [p. 20]), we agree we must conditionally reverse and remand the case to the juvenile court for further proceedings. The Agency is to make additional inquiry and documentation efforts consistent with its duties and the juvenile court shall hold a hearing thereafter to determine whether, in light of the outcome of the inquiry as documented, the ICWA applies. If the juvenile court determines the inquiry is proper, adequate, and duly diligent and concludes that the ICWA does not apply, any inquiry error is cured, and the judgment shall be reinstated. In contrast, if the inquiry reveals a reason to know the minor is an Indian child, the tribe has been notified, and the tribe determines the child is a member or citizen, or eligible for membership or citizenship, of an Indian tribe, the ICWA applies and the juvenile court must proceed in accordance with the ICWA. (*Dezi C., supra*, __ Cal.5th __ [p. 22].) We expect *all* involved entities will cooperate to ensure that the ICWA proceedings and their documentation are thorough. (See *H.A. v. Superior Court, supra*, 101 Cal.App.5th at pp. 964-966 [describing this court's expectations of counsel, the juvenile court, and the agency for ICWA compliance].)

## III. DISPOSITION

The orders terminating parental rights are conditionally reversed and the matter is remanded for the limited purpose of complying with the inquiry and notice provisions of the ICWA. If the juvenile court thereafter finds a further inquiry was proper and adequate, due diligence has been conducted, and concludes the ICWA does not apply, the orders shall be reinstated. If, however, the juvenile court concludes the ICWA applies, the juvenile court is ordered to conduct a new section 366.26 hearing and proceed in accordance with the ICWA and California implementing provisions, including

considering any petition filed to invalidate prior orders.  (25 U.S.C. § 1914; § 224, subd. (e).)

/S/

RENNER, J.

We concur:

/S/

EARL, P. J.

/S/

ROBIE, J.